**Frank E. DARRAH, Jr., Plaintiff,**

v.

**MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Defendant.**

**No. 93–0353–CV–W–3.**

United States District Court, W.D. Missouri, Western Division.

May 16, 1995.

Larry E. Butcher, Kearney, MO, for Frank E Darrah, Jr.

Paula R. Lambrecht, Missouri Highway & Transp. Com'n, Jefferson City, MO, for Missouri State Highway and Transp. Com'n.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ELMO B. HUNTER, Senior District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment. Plaintiff's Complaint basically alleges that Defendant (Plaintiff's employer) violated the Fair Labor Standards Act ("FLSA") by failing to pay him for time during which he was "on call."

## I. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling a summary judgment motion, the court views the facts in the light most favorable to the non-moving party and allows that party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, when the non-moving party fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is appropriate.

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the evidence favoring the non-moving party must be more than "merely colorable." *Id.* Stated differently, when the moving party has carried its burden under the rule, its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, the essential question in ruling a motion for summary judgment is whether the evidence presents sufficient disagreement to require submission to a jury or whether the questions of material fact are sufficiently settled, or are so one-sided, that the court may decide the only remaining question—that being one of law.

## II. FACTUAL BACKGROUND

In May of 1988 Plaintiff went to work for Missouri's Highway Department as a "summer helper." (Darrah Dep. at 11; Darrah Aff. ¶ 1.) For the first five months of this employment, he worked on a "temporary ba-

sis," becoming a permanent employee around October of that year. (Darrah Dep. at 12.) It was his job to help maintain a portion of the highways of the State of Missouri, (Pl.'s Compl. ¶ 3), by removing dead animals from the roadways, (Darrah Dep. at 98–99), repairing the roadways themselves, *id.* at 100–101, monitoring crossings in the event of floods, *id.* at 102–104, replacing signs that had been blown down or run over, (Jett Aff. ¶ 8), removing snow and spreading salt or sand to prevent the accumulation of ice, (Darrah Dep. at 65; Tackett Aff. ¶¶ 1–2), etc.

Defendant's maintenance employees typically worked Monday through Friday from 7:30 a.m. until 4:00 p.m. *Id.* at ¶ 10. Additionally, Defendant had in place an "on-call" policy that required maintenance employees to be available to some extent between November 1 and April 1[1] of the following year in case they were needed for emergency roadwork (e.g., a snowstorm) which arose during the night or could not be sufficiently handled by the employees working at that time.[2] (Pl.'s Compl. ¶ 7.) The on-call policy basically established two shifts—a day shift and a night shift. (Darrah Dep. at 68.) Employees were considered on call during the hours that defined the parameters of their respective shift. *Id.* During such hours the employee would be subject to being called in

to work overtime in the event of an emergency. *Id.* at 67.

From the beginning of Plaintiff's employment until 1993, employees switched shifts after every storm. *Id.* at 69. In other words, those on the day shift would switch to the night shift and vice-versa. *Id.* Plaintiff claims, however, that there was some ambiguity about what constituted a storm—or at least a storm big enough to justify a switch in shifts. *Id.* Accordingly, in 1993 Defendant altered its policy to allow for a switch in shifts every two weeks regardless of the occurrence or size of a storm. (Tackett Aff. ¶ 9.)

Although Plaintiff concedes that Defendant did have in place the above-mentioned methods of determining who was on call, it is his position that the on-call policy was practically worthless because even if an employee was on the "off shift" they might still be called in if the foreman could not get enough help from those on the "on shift."[3] (Darrah Dep. at 66.) Consequently, Plaintiff claims that during the winter season he was unable to do many of the things that he would otherwise have done because he could never be sure that he wouldn't be called into work and have to respond to that call immediately.[4] (Pl.'s Compl. ¶ 7.) In fact, he contends that Defendant's utilization of this on-call policy created such an imposition on his non-working hours[5] that he is owed overtime pay under

1. This, obviously, is the late fall and winter season during which the state is subject to certain amounts of snowfall that would require Defendant to have personnel available to man the trucks that go out and clear the roadways.

2. There is some disagreement between the parties about how the "on-call" policy was utilized. Therefore, for the limited purpose of addressing Defendant's Motion for Summary Judgment, the Court will assume that the policy was instituted, utilized, and applied by the Defendant and to this Plaintiff as Plaintiff has alleged.

3. Plaintiff contends that he was subject to being called into work at any time—even when he was on the off shift. (Darrah Dep. at 66.) While that may be technically true, some clarification needs to be made. Persons on the off shift, including Plaintiff, would not be called until and unless the foreman could not get the requisite help from the on shift. *Id.* at 67; R. Hr'g Def.'s Mot.Summ.J. at 25–26. Only in that event would the foreman turn to those on off-shift status. Therefore, although technically he could have been called in at any time—if there was an emergency and if

the foreman could not get the help he needed from those on the on shift—Plaintiff was nonetheless on the off shift. This is not an unusual or unique situation, in fact, it is likely that any employer who has employees on call in the event of an emergency will turn to those employees who are not on call if and when they are unable to get the help needed for a given emergency.

4. Actually, Plaintiff claims that a forty-five minute response time would be acceptable, but that one and one half hours would not be. (Darrah Dep. at 22, 24.)

5. Rather than providing a list of things Plaintiff claims that he was unable to do due to the utilization of Defendant's on-call policy, suffice it to say that when he was on call he was required to be available within approximately one hour in the event of an emergency. This type of requirement could prevent many different types of activities, however, many of those this individual may not have participated in anyway. Accordingly, the particular or specific things that this Plaintiff was unable to do because of this on-call policy

the FLSA for all of the hours he was on call even when he wasn't working. (Pl.'s Compl. ¶ 9.)

### III. *DISCUSSION*

The law upon which Plaintiff has based his Complaint provides, in relevant part, that

[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) (1964 & Supp.1995). As indicated by the above-cited language, for this section to apply at all, either the employee or the employer must be engaged in "commerce" or the "production of goods for commerce." [6] The Court is not convinced that this requirement has been satisfied, however, as the parties themselves have not raised this issue the Court will assume, for purposes of this Order only, that section 207 does apply in this case.

While 29 U.S.C. § 207 does not specifically address the issue of whether or not "on-call" time is compensable overtime, the Supreme Court has held that it may be in some circumstances. *See Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *Skidmore v. Swift & Co.* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Although there is no bright-line test for what constitutes compensable on-call time under the FLSA, the Supreme Court has suggested

that if the employee was "engaged to wait" the time would be compensable, however, if the employee was merely "wait[ing] to be engaged" it would not. *Skidmore,* 323 U.S. at 137, 65 S.Ct. at 163. This terminology, although interesting philosophically, does not provide much in the way of a practical and useful standard to be applied by the lower courts. What it does tell us is that at some point the on-call requirements imposed on an employee rise to the level of compensable overtime under the FLSA. The question remains, however, at what point?

In an attempt to shed some light on this matter the Department of Labor, via the Code of Federal Regulations, has provided the following hypothetical: "[w]here, for example, a firefighter has returned home after the shift, with the understanding that he or she *is expected* to return to work in the event of an emergency in the night, such time spent at home is normally *not compensable.*" 29 C.F.R. § 553.221(d) (1994) (emphasis added). Although this example is not very fact intensive, and the ultimate decision in every case must be made based upon all the facts relevant thereto, it nonetheless provides a good base from which to start our analysis.

The Code's hypothetical posits an employee who has finished his shift and gone home for the night. However, in the event that a *totally unforeseeable* fire occurs in the middle of the night, that employee is *expected* to be available for duty. One may also logically infer from the hypothetical that this employee is not free to respond to the call only if he wants to. Firefighters are needed in the event of an emergency and if they only responded when it was convenient for them, one may fairly assume that disciplinary actions would follow. Additionally, due to the nature of this employee's position, it may be

---

are irrelevant to the determination of whether or not the policy violated the FLSA. If that were not true, a subjectively applied standard would allow a jury to find that a given on-call policy violated the FLSA with respect to one employee because that employee had relatives who lived out of town, or had children, or was married, or any number of other reasons, but the same policy didn't violate the FLSA with respect to another employee merely because this individual just so happened to do very little that conflicted with the on-call restrictions. That would be illogical.

Therefore, the standard to be applied must be an objective one which looks at the terms of the policy itself and ignores the specific and individually differing impositions resulting therefrom.

**6.** " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203 (1978 & Supp.1995).

further assumed that the employee must respond within a limited amount of time. In sum, the hypothetical presents a situation in which (1) the employee has no way of knowing if he will be called into work or not; (2) he must respond if and when he is called; and (3) he will be disciplined if he does not respond quickly. Despite these facts, the Code states that this individual will normally *not* receive compensation for such time.

In accordance with the Code's suggestion, the courts that have dealt with this issue have consistently held that any imposition created by an on-call policy must be *very significant* to justify compensation for time spent on call but not at work or working. Put differently, although *every* on-call policy creates some imposition on the life of the employee subject to the terms thereof, such time will nonetheless rarely be compensable. In fact, in the vast majority of cases on-call time has been held not compensable. *See, e.g., Berry v. County of Sonoma,* 30 F.3d 1174 (9th Cir.1994) (reversing the district court's holding that plaintiffs/coroners were entitled to compensation for on-call time despite the facts that these coroners were on call twenty-four hours a day, were required to respond to pages within fifteen minutes, and received between three and six calls per day); *Gilligan v. City of Emporia, Kansas,* 986 F.2d 410 (10th Cir.1993) (affirming the district court's decision that plaintiffs/water and sewer department employees were not entitled to compensation for on-call time although required to: (1) wear a pager, (2) participate in nothing that might prevent them from hearing the pager, (3) avoid drinking alcohol, (4) respond within 30–60 minutes at any given time, (5) respond to the call in a company vehicle—although such could not be used for personal reasons, and (6) were subject to disciplinary and legal actions if they failed to comply with these requirements, the Court stated that "plaintiffs' personal pursuits are not restricted to such a degree as to require that plaintiffs' on-call time be compensated as overtime under the FLSA." *id.* at 413); *Armitage v. City of Emporia, Kansas,* 982 F.2d 430 (10th Cir.1992) (reversing the district court's holding that plaintiffs/detectives were entitled to compensation for on-call time despite the facts that these detec- tives were required to remain sober while on call, carry a pager at all times while on call, were required to report for duty within twenty minutes, and were actually called into work 1–2 times per week); *Owens v. Local No. 169,* 971 F.2d 347 (9th Cir.1992) (reversing district court's decision granting plaintiffs'/mechanics' motion for summary judgment and remanding with instructions to enter summary judgment in favor of employer); *Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606 (6th Cir.1992) (affirming the district court's grant of summary judgment to defendant/employer and against highway maintenance workers); *Bright v. Houston Northwest Med. Ctr. Survivor, Inc.,* 934 f.2d 671 (5th Cir.1991) (affirming the district court's order granting summary judgment to the employer despite the facts that the plaintiff, a biomedical equipment repair technician, was *always* on call, was required to carry a pager at all times, could not become intoxicated, and was required to respond within twenty to twenty-five minutes day or night). *See also Boehm v. Kansas City Power & Light Co.,* 868 F.2d 1182 (10th Cir.1989); *Kelly v. Hines–Rinaldi Funeral Home, Inc.,* 847 F.2d 147 (4th Cir.1988); *Norton v. Worthen Van Service, Inc.,* 839 F.2d 653 (10th Cir.1988); *Rousseau v. Teledyne Movible Offshore, Inc.,* 805 F.2d 1245 (5th Cir. 1986).

In response to the general rule that on-call time is not compensable, Plaintiff has pointed to the Eighth Circuit case of *Cross v. Arkansas Forestry Comm'n,* in which the Eighth Circuit held that the district court had erred by granting defendant's motion for summary judgment, stating that "[a] reasonable jury could return a verdict for the employees based on this evidence." 938 F.2d 912 (8th Cir.1991). It is Plaintiff's contention that granting summary judgment to Defendant in this case would be improper because the restrictions imposed on the *Cross* plaintiffs were "identical to the requirements imposed on Plaintiff here...." (Pl.'s Sugg.Opp.Def.'s Mot.Summ.J. at 26.) If that were true, in light of the *Cross* decision, summary judgment in favor of Defendant would indeed be improper. Unfortunately for Plaintiff, it is not.

While the *Cross* case provides an excellent example of when circumstances might justify an award of overtime compensation to employees while on call despite the Code's statement that such time is normally not compensable, it is significant to note the Eighth Circuit's expressed attempt to distinguish this case from those in which summary judgment would have been proper. The Court stated that

> the facts of this case are unlike typical "on-call" cases in two respects. The Commission requires the employees to monitor radio transmissions continuously during each work period, *rather than contacting them exclusively by telephone or electronic pager....* Because the radio must be on at all times, the employees' ability to entertain in their homes, attend social gatherings, attend church services or engage in other personal pursuits is limited. The employees' ability to enjoy common activities such as watching television or reading is also decreased because they must devote attention to radio transmissions. Additionally, instead of being placed "on-call" for a defined number of hours during a work period, the Commission's policy places the employees on subject-to-call status twenty-four hours per day every day of a work period.... Thus, the employees do not receive a respite during a work period from the subject-to-call requirement.

*Cross,* 938 F.2d at 917 (emphasis added). The significance of this distinction is readily discerned. These firefighters were not merely waiting for a phone call or a page (i.e., "waiting to be engaged") they were actually required to do an affirmative act while waiting—listen to the radio for any emergency transmissions. Accordingly, the Eighth Circuit determined that a reasonable jury could have found that these employees had been, as the Supreme Court stated in *Skidmore,* "engaged to wait."[7]

The second factor to which the Eighth Circuit looked in making its determination that this case was atypical was that these employees were on call twenty-four hours a day. In other words, for twenty-four hours every day during an entire workweek these firefighters had to carry their radios with them, have them on at all times, and be available to respond to an emergency call within 30 minutes at any point, day or night, during that entire period. It was based on these two points of distinction that the Eighth Circuit determined that a reasonable jury could find that these employees had been engaged to wait rather than merely waiting to be engaged.

Despite Plaintiff's contention that the present case is "identical" to that of *Cross* (so far as the relevant restrictions imposed on the respective plaintiffs) there are two glaring differences. Significantly, those differences are the very things to which the Eighth Circuit pointed in its deliberate effort to distinguish that case from the "typical 'on-call' cases." Mr. Darrah was not subject to a twenty-four hour a day on-call duty and he was not required to do any affirmative acts while on call.[8]

The only case the parties have directed this Court's attention to in which the employee won his claim for compensable on-call time under the FLSA was *Renfro v. City of Emporia, Kansas,* 948 F.2d 1529 (10th Cir.1991). In that case, the plaintiffs/firefighters were scheduled for six, twenty-four hour shifts within every 19 day period. *Id.* at 1531. Additionally, these individuals were on a

---

**7.** It is significant to note that the Eighth Circuit did not find that these facts constituted compensable overtime, it merely held that a reasonable jury might.

**8.** In *Cross* the court specifically stated that requiring the employees to carry and listen to radios continuously was significantly different than merely requiring employees to be available by phone or pager. The following explains how Mr. Darrah was informed of emergencies.

> Q: How are you contacted when there is a need for you or other workers to come in?

> A: Telephone.

> Q: And how were you told that you must be available? Can you leave a number at your residence that you could be reached?

> A: Yeah, we can leave a number.

> Q: Are you required to stay at home by the telephone?

> A: No, we're not required to sit by the phone.

(Darrah Dep. at 70.) This, obviously, depicts a significant factor in the very "typical 'on-call'" scenario from which the Eighth Circuit sought to distinguish *Cross.*

mandatory callback list for each twenty-four hour period following a "tour of duty." *Id.* These firefighters were not required to remain at the stationhouse while on call, however, they were expected to be available within twenty minutes following a call. *Id.* at 1532. Furthermore, and most significantly, these firefighters received up to *thirteen calls per day*, with an average of four or five per day. *Id.* Based on these circumstances, the court found that the district court had not improperly determined that "the firefighters were 'engaged to wait,' and therefore entitled to compensation under [the] FLSA ... and that the frequency with which firefighters were subject to callbacks distinguished this case from other cases which have held on-call time as noncompensable." *Id.* at 1532–33.

Unlike the plaintiffs in *Renfro* and *Cross*, Mr. Darrah was not required to do any affirmative acts while on call, he was not on call twenty-four hours a day, and he was not actually called on with any significant frequency.[9] Furthermore, even when Mr. Darrah was on call he was able to predict with some degree of certainty when he would be called due to the nature of the emergencies for which he was needed.[10] Mr. Darrah was not required to live or remain on the premises of his employer while on call. He was not required to carry a radio or even a pager. He was allowed nearly an hour to respond to a call and was not disciplined if unavailable when on off-call status.

It is not disputed that Plaintiff's ability to do certain things was inhibited by the utilization of Defendant's on-call policy, however, that is inevitably true in every case in which an employee is subject to emergency on-call status. Despite that given fact, however, the Code of Federal Regulations, as well as every case that has addressed this issue, tells us that without some significant additional restriction on the employee's off-duty time, such that the time can be said to have been spent primarily for the employer's benefit, the time will not be compensable.

Based upon the evidence presented to this Court, both in the pleadings and through affidavits, exhibits, and depositions submitted in conjunction therewith, it is this Court's considered opinion that the evidence is insufficient to allow a reasonable jury to find that Defendant's on-call policy was written or executed in violation of the FLSA. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

9. Plaintiff claims that he was called into work during the winter season approximately once per week. (Darrah Aff. ¶ 23.) While that does display some imposition, it hardly compares to the *Renfro* plaintiffs who were called an average of four to five times per day.

10. The emergencies for which Plaintiff was subject to being called were weather related, and although the weather is not precisely predictable it is certainly more predictable than fire. Plaintiff has argued that even though the weather may be somewhat predictable, he would normally be working during the day and therefore would not have an opportunity to hear the weather forecast. (Darrah Aff. ¶ 21.) Accordingly, he claims that it was "almost impossible to know what the weather is going to do later that night." *Id.* at ¶ 22. The Court finds this statement both incredible and irrelevant.

It is incredible because Plaintiff could simply listen to the radio in the truck he was driving or the one he stated he carried. He could listen to the weather at home the night before or in the morning before leaving for work. He could pick up a paper on the way to work or during lunch. Or, he could simply ask someone what they had heard. While the Court recognizes that weather forecasts do not guarantee that a storm will or will not occur, in the vast majority of cases they do provide a reasonable assurance that a storm is or is not coming as well as some indication of the size of such storm.

Finally, Plaintiff's claim that he had no opportunity to watch the weather during the day is irrelevant to this case because even if there were no weather forecasts, as there are no fire forecasts, reasonable inferences drawn from the hypothetical provided by the Code of Federal Regulations tell us that such time would nonetheless not be compensable. *See supra* at 7.