AVIAD DAGAN & another[1] *vs.* JEWISH COMMUNITY HOUSING
FOR THE ELDERLY.

No. 96-P-1978.

Suffolk. June 4, 1998. - September 28, 1998.

Present: LENK, GILLERMAN, & SMITH, JJ.

*Minimum Wage. Labor,* Minimum wage, Overtime compensation, On-call
time.

This court concluded that, in an action to recover back wages and overtime
compensation, the question whether the plaintiffs' "on-call" time was com-
pensable under the Minimum Fair Wage and Overtime Law, G. L. c. 151,
§§ 1 and 1A, could be resolved as a matter of law where the underlying
facts were undisputed. [518-519]

In an action against an employer seeking back wages and overtime compensa-
tion, uncontroverted evidence demonstrated that the plaintiff employees,
who were required to remain on the employer's premises during on-call
time, used that time, when not engaged in work for the employer, for their
exclusive, personal benefit: accordingly, such time was not compensable
under the Minimum Fair Wage and Overtime Law, G. L. c. 151, §§ 1 and
1A, and the trial judge correctly granted summary judgment in favor of the
defendant employer [519-521]; further, the compensation provided to the
plaintiffs by the employer, in the form of a rent-free apartment located on
the employer's premises, effectively provided the plaintiffs with the
minimum wage for the on-call hours they actually worked [522].

CIVIL ACTION commenced in the Superior Court Department on
September 27, 1994.

The case was heard by *John C. Cratsley,* J., on motions for
partial summary judgment.

*Paul L. Nevins* for the plaintiffs.
*David F. Grunebaum* for the defendant.

GILLERMAN, J. From October 1, 1991, through June 13, 1994,
Aviad Dagan and Vered Dagan, husband and wife, were
employed as the "site representatives" at the Golda Meir House,

[1]Vered Dagan.

an apartment complex owned and operated by Jewish Community Housing for the Elderly IV, Inc., a corporation organized under G. L. c. 180 and exempt from Federal income tax under § 501(c)(3) of the Internal Revenue Code (the corporation). The corporation is affiliated with the defendant in this case. The parties have agreed, solely for the purpose of this case, to accept the defendant, Jewish Community Housing for the Elderly (JCHE), as the party legally responsible.

In exchange for their services (described below) the plaintiffs were provided with a rent-free apartment including utilities, and were initially paid $25.00 per month for basic telephone service, later increased to $30.00 per month. They received no other compensation. Following the termination of their employment effective June 13, 1994, the plaintiffs brought suit, with a jury claim,[2] alleging violations of the Minimum Fair Wage and Overtime Law, G. L. c. 151, §§ 1[3] and 1A[4] (count I), and the Weekly Payment of Wages Act, G. L. c. 149, § 148 (count II). The judge allowed the defendant's motion for partial summary judgment[5] on count I. The judge, sua sponte, was of the opinion that the dismissal of count I also disposed of count II. Thereafter a final judgment was entered in favor of the defendant dismissing both counts of the complaint. The plaintiffs have appealed from that final judgment.

The Golda Meir House (house) is an apartment building. The

---

[2]Since this case comes up on the allowance of the defendant's motion for summary judgment, the availability of the jury claim has not been briefed or argued. For discussion of the right to a trial by jury, see *Dalis* v. *Buyer Advertising, Inc.*, 418 Mass. 220 (1994).

[3]General Laws c. 151, § 1, as in effect prior to St. 1995, c. 196, § 1, in pertinent part read: "[A]n oppressive and unreasonable wage . . . shall be null and void. A wage of less than four dollars and twenty-five cents per hour, in any occupation . . . shall conclusively be presumed to be oppressive and unreasonable . . . ."

[4]The overtime statute, G. L. c. 151, § 1A, as appearing in St. 1961, c. 431, provides, in pertinent part: "[N]o employer in the commonwealth shall employ any of his employees . . . for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less that one and one half times the regular rate at which he is employed."

[5]In response to the defendant's motion for partial summary judgment the plaintiffs filed a motion for summary judgment. The plaintiffs' motion was denied by the judge. The correctness of that ruling is not argued on appeal, and the point is waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

units are leased to individuals and couples over the age of sixty-two who meet certain eligibility standards set by the Federal government. Most residents pay rent equal to thirty percent of their adjusted gross annual income, with the result that those tenants pay below-market rent for their apartments. Eighty percent of the tenants receive so-called "Section 8" rental subsidies from the Federal government. Private charitable contributions subsidize additional health and social programs offered to the residents.

The mission statement of the defendant states that its basic purpose is to promote, encourage, and support the independence, safety, and security of its residents. To that end the defendant is a provider of "quality of life services." and an organizer of "support services." These include safe and attractive facilities, meals, transportation, and social, cultural, and educational activities as well as home health and nursing care, special clinical diets, and personnel to assist the residents.

Identical employment agreements were signed by each plaintiff. The agreement recites that the rent-free apartment is the "work site" for the job and, together with the provision of utilities and basic telephone service, is in exchange for the duties required to be performed. The agreement includes a job description of a "site representative." The job description sets out the duties to be performed. Each site representative is required to be "on call" one hundred twenty-three hours weekly.

The central issue in this controversy is the need to determine the working hours of the plaintiffs for the purpose of applying the minimum wage and overtime provisions of G. L. c. 151. More particularly, the question is: when does "on-call" time — that is to say, time when the site representative is on duty but not actually working — constitute working time for the purpose of applying the minimum wage and overtime provisions of G. L. c. 151? An agreement to work for less than the minimum wage is unenforceable. G. L. c. 151, § 20.[6]

Since the plaintiffs, who oppose the defendant's motion for summary judgment, will have the burden of proof at trial, the defendant is entitled to summary judgment "if [it] demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c),

---

[6]There is a two-year statute of limitations, G. L. c. 151, § 20A, regarding suits to recover any underpayment. Therefore, at best, the plaintiffs could recover for the period September 27, 1992 (two years before their complaint was filed), through June 13, 1994.

unmet by countervailing materials, that the party opposing the motion has *no reasonable expectation* of proving an essential element of that party's case. To be successful, a moving party need *not* submit affirmative evidence to *negate* one or more elements of the other party's claim." (Emphasis added.) *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). If the moving party makes such a showing, then the party opposing the motion — here, the plaintiffs — must "respond by set-[ting] forth specific facts showing that there is a genuine issue for trial" (citations omitted). *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994). If the moving party makes the demonstration required by *Kourouvacilis*, and the party opposing the motion does not meet that showing, the moving party will also have satisfied its obligation to demonstrate "the absence of a genuine issue of material fact on every relevant issue . . . ." *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 127 (1997).

With that standard in mind, we review the submissions of the parties.

*The defendant's submissions.* 1. The employment agreement (described above) includes a job description which states that the "[h]ours of Site-Rep. duty are as follows[:] . . . Monday through Thursday — 5:00 P.M. to 8:00 A.M. . . . Friday through Monday — 5:00 P.M. Friday eve. to 8:00 A.M. Monday morning," and a full day of duty on Jewish and legal holidays as specified by management. Holidays aside, the job description required each plaintiff to be on call one hundred twenty-three hours weekly.

The duties of a site representative, as stated in the job description and a handbook for site representatives, include the following: regular security rounds of the facility are to be maintained, and miscellaneous housekeeping tasks are to be performed regularly, such as monitoring and changing trash containers, and cleaning up the results of accidental spills. A log, or incident report, of all maintenance and social problems and other events which occur during duty hours is to be maintained. The overarching duty is to "[r]espond[] immediately to resident emergency call[s] or alarms [and to] [c]all[] emergency medical help as needed." Also included is the need to "[r]espond[] to *ALL* resident calls to determine the nature of said call." "Site Representatives . . . are responsible for supplying reasonable and courteous service to our residents in every situation."

The job description also includes the following, to which the plaintiffs subscribed: "I understand that when I am on duty as a JCHE Site Representative *I may be required to perform services for the entire length of my shift* if situations arise to warrant so" (emphasis added).

2. The plaintiffs maintained a log of each call received from a resident. In the year 1993, for example, by which time the plaintiffs were familiar to the residents, the log showed ninety calls over the twelve months, or an average of 1.73 calls per week.[7] There was no record kept of the time needed to respond to the calls.

3. Excerpts from the deposition of the plaintiff Vered Dagan, which consist only of nine pages, include Vered's (Aviad Dagan's wife) testimony that weekday nightly rounds were "never" performed by both plaintiffs together; that the rounds were performed twice a night — at 8:00 P.M. and 10:00 P.M. — and required about "15 to 20 minutes . . . walking fast."

4. Excerpts from the deposition of the plaintiff Aviad Dagan, which are more extensive but are frequently disjointed, include the following testimony: Aviad worked Monday through Thursday, during the day, at another job. On Fridays, during the day, there was a period of unknown duration when he and a "partner" attempted to conduct a business — never described — which was "wholesale market to the blind." The business came to nothing. Aviad made the weekday nightly rounds with considerable care. He did the regular rounds at 8:00 and 10:00 P.M. and a brief round at 5:00 P.M. when he returned from his daytime job. The 5:00 P.M. round took about thirty to forty-five minutes; the 8:00 and 10:00 P.M. rounds took not more than an hour or an hour and a quarter. When he was on call he was either in his apartment or someplace in the building. Either Vered *or* Aviad responded to calls, depending on who was available at the time of the call. All meals were regularly prepared and eaten in their apartment. While on call the plaintiffs were free to sleep, watch television, listen to the radio, play games on the computer, entertain friends (although done only infrequently), and take care of miscellaneous personal responsibilities such as paying bills and doing laundry.

[7] The judge found that, on the basis of the log of all calls during their entire period of employment, October, 1991, to June, 1994, the plaintiffs received "a total of 229 calls . . . ranging from one to 15 calls in a month, with an average of one or two calls per week."

*The plaintiffs' submissions.* 1. The "Site Representative HAND BOOK — GUIDELINES — Golda Meir House" states the same on-call hours as appear in the job description. The handbook contains additional information, including the following: "Weekday evening rounds must be done every 2 hours, starting at 6:00 P.M. through 10:00 P.M., unless determined otherwise by Management. When on duty it may be necessary, due to circumstances or as determined by Management, for the site representative on duty to remain 'active' for the entire length of one's scheduled shift. Additional duties and/or patrols may be required at the sole discretion of the Management." The handbook continues by describing the manner in which the security rounds are to be executed. The handbook also contains detailed provisions instructing site representatives how to respond to medical emergencies, fire alarms, elevator calls, and calls from the residents, namely, "*NEVER* argue with the resident. They need compassion, understanding, and reassurance from the staff."

2. A document on the stationery of the defendant, captioned "LIVE-INS RESPONSIBILITIES," which appears to have been prepared for the benefit of the residents, states that "LIVE-INS ARE EXPECTED TO RESPOND TO ALL *MEDICAL, SECURITY AND MAINTENANCE* EMERGENCY; THEY ARE ON CALL FROM 5:00 P.M. TO 8:00 A.M. ON WEEKDAYS AND THROUGHOUT THE ENTIRE WEEKEND AND HOLIDAYS. DURING THESE TIMES THEY *ALWAYS REMAIN ON THE PREMISES*. . . . IN THE EVENINGS, THE LIVE-INS ARE *ONLY REQUIRED TO STAY AWAKE UNTIL 10:00 P.M.* [emphasis added]. THEY WILL OF COURSE RESPOND TO EMERGENCIES AT ANY TIME DURING THE NIGHT."

3. A document, captioned "Wage Calculation for Live-in Coverage by JCHE Paid Staff,"[8] states: "Live-in hrs defined as follows: Weekdays: 5 P.M. - 11 P.M. plus 7 A.M. - 8 A.M. = 7 hours[;] Weekend: Fri (5 P.M. - 11 P.M. = 6 hours) + Sat/Sun (7 A.M. - 11 P.M., 2 days, = 16 x 2 = 32 hrs) + Mon (7 - 8 A.M. = 1 hr) = 39 hours total weekend[.] Full week: 1 Wkend (39 hrs) + 4 Wkdays (28 hrs) = 67 hours."

We now consider whether the defendant has made the showing required by *Kourouvacilis*, and if so, whether the plaintiffs

---

[8]This document appears to set forth the required coverage during the period the plaintiffs take vacation time. The coverage is to be provided by the regularly-paid staff of the house.

have met that showing by setting forth facts which demonstrate that there is a genuine issue for trial.

The essential facts put forward in the defendant's submission are these: (i) under the provisions of the job description, the on-call hours of a site representative were one hundred twenty-three hours weekly; (ii) during on-call hours, the plaintiffs were required to remain on the premises, subject to the demands of management and the residents; (iii) the plaintiffs' actual working time consisted of making nightly rounds of the facility, Monday through Friday,[9] and responding to emergency calls from the residents at the experienced rate of one to two calls weekly; the plaintiffs were subject to calls by the residents and by management for the remainder of the on-call hours; (iv) the plaintiffs' on-call hours included time the plaintiffs required for sleeping and eating[10]; (v) the plaintiffs' weekday and weekend on-call hours, when not spent making rounds or answering calls from the residents, were available to, and in fact were used by, the plaintiffs for their exclusive, personal benefit, but subject to their remaining on the premises; and (vi) while both plaintiffs signed employment agreements, the site representative position was a "one-person" job, and none of the required tasks were performed by *both* plaintiffs at the same time.

These facts are not disputed by the plaintiffs' submissions or by any other material available under Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974) (pleadings, answers to interrogatories, etc.), and no additional facts are proffered by the plaintiffs regarding their use of on-call, non-working time other than the defendant's notice to the residents that the plaintiffs were not to be disturbed after 10:00 P.M. except in the case of an emergency. Given the absence of any contrary showing by the plaintiffs regarding the facts proffered by the defendant, those facts are undisputed. There being no genuine issue as to any material fact, the case is ripe for summary judgment. Mass.R.Civ.P. 56(c). More particularly, we must decide, as matter of law on the undisputed facts, whether the defendant's submission sufficiently demon-

[9]However, under the provisions of the job description and the site representative handbook, the weekend began on Friday at 5:00 P.M., and the nightly rounds were required only during "weekdays." Nevertheless, we have assumed, favorably to the plaintiffs, that the rounds were also made on Friday nights.

[10]We have noted that the plaintiffs received no cash payments from the defendant (other than for basic telephone service), and that Aviad worked a daytime job Monday through Thursday.

strates that the plaintiffs have no reasonable expectation of establishing their statutory claims.

The plaintiffs, citing *Skidmore* v. *Swift & Co.*, 323 U.S. 134, 136-137 (1944), and *DeCourcey* v. *Weston Racquet Club, Inc.*, 15 Mass. App. Ct. 373 (1983),[11] assert simply that whether, or the extent to which, on-call time is compensable time under the minimum wage law is a question of fact (or a mixed question of law and fact) which must be submitted to the jury.

In *Skidmore*, the Supreme Court considered the question whether on-call time was compensable under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq. (1938) (employees must be compensated at no less than the minimum wage and one and one-half times their regular rate for overtime work). The Court stated that "[w]hether in a concrete case such [on-call] time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court." *Skidmore*, 323 U.S. at 136-137.

However, a number of Federal circuit court opinions have held that where the facts are undisputed, *Skidmore* does not preclude the resolution of the question as matter of law. See *Bright* v. *Houston N.W. Med. Center Survivor, Inc.*, 934 F.2d 671, 674-675 (5th Cir. 1991), cert. denied, 502 U.S. 1036 (1992) ("[T]he undisputed facts show that the on-call time is not working time"; *Skidmore* distinguished; summary judgment for the defendant affirmed); *Martin* v. *Ohio Turnpike Commn.*, 968 F.2d 606 (6th Cir. 1992), cert. denied, 506 U.S. 1054 (1993) (summary judgment for the defendant employer affirmed); *Birdwell* v. *Gadsden, Ala.*, 970 F.2d 802, 807-808 (11th Cir. 1992) ("Whether a *certain* set of facts and circumstances constitute work for purposes of the FLSA is a question of law" [emphasis added]; *Skidmore* explained); *Owens* v. *Local No. 169, Assn. of Western Pulp & Paper Workers*, 971 F.2d 347, 356 (9th Cir. 1992) (plaintiffs failed to contest or rebut the defendant employer's proffered evidence, or to present any evidence of the plaintiffs' personal use of on-call time, thereby permitting summary judgment for the defendant). Contrast *Cross*

---

[11]The only other relevant Massachusetts appellate decision of which we are aware is *Erickson* v. *Waltham*, 2 Mass. App. Ct. 436, 442 (1974), where we said that "[g]enerally speaking, time available for, or spent, sleeping and eating is non-compensable, even where the employee is required to be on the employer's premises," quoting *Rapp* v. *United States*, 340 F.2d 635, 642 (Ct. Cl. 1964).

v. *Arkansas Forestry Commn.*, 938 F.2d 912, 916-917 (8th Cir. 1991) (summary judgment for employer reversed where record contained evidence of "significant interference with . . . employees' private activities" during "subject-to-call" hours).

Further, *DeCourcey* does not provide any assistance to the plaintiffs. The case did not come to us on undisputed facts, see *DeCourcey*, 15 Mass. App. Ct. at 374-375, and thus the issue in the instant case was not presented in *DeCourcey*.[12]

There remains the pivotal question: whether, as a matter of law on the undisputed facts, the plaintiffs' entire on-call time (one hundred twenty-three hours)[13] — i.e., working *and* waiting, as contrasted with working time only — constituted working time for purposes of applying the minimum wage and overtime provisions of c. 151. We think not.

The central fact of this case is that when not actually engaged in the nightly rounds, or responding to calls from the residents — a weekly total for both tasks of not more than eighteen and one-quarter hours, see note 14, *infra*, and related text — the plaintiffs were at home either sleeping, eating, or pursuing other desired personal or recreational activities which had no connection with — much less a benefit to — the defendant. While the plaintiffs' freedom of movement after 5:00 P.M. on weekday evenings until 8:00 A.M. the following morning, and during the entire weekend beginning at 5:00 P.M. on Friday until 8:00 A.M. on the following Monday, was limited by the requirement that they remain on the corporation's premises during all on-call hours, the plaintiffs' home was within those premises and there

---

[12]Moreover, *General Elec. Co.* v. *Porter*, 208 F.2d 805 (9th Cir. 1953), cert. denied, 347 U.S. 951 (1954), upon which we relied as authority for the proposition that "the question whether 'sleep time' [is] compensable [is] a mixed question of law and fact," *DeCourcey*, 15 Mass. App. Ct. at 375, appears to have been superseded by more recent Ninth Circuit cases such as *Owens* v. *Local No. 169, Assn. of Western Pulp & Paper Workers*, 971 F.2d 347 (9th Cir. 1992) (described in the text, *supra*), and *Berry* v. *County of Sonoma*, 30 F.3d 1174 (9th Cir. 1994), cert. denied, 513 U.S. 1150 (1995) (discussed in the text, *infra*).

[13]While both plaintiffs signed employment agreements, there is no evidence that the work assignment was done by more than one person. That is to say, the plaintiffs presented no evidence that both plaintiffs did each (or any) nightly round, or that both plaintiffs responded to calls from a resident. (Vered's undisputed deposition testimony was that the rounds were conducted by one person, not two.) The plaintiffs' aggregate claim to two hundred forty-six hours of compensable time weekly is entirely without foundation.

was no limitation on the amount of on-call time the plaintiffs could spend at home.

There is no Massachusetts appellate decision which bears directly on this case, but numerous Federal cases that arose under the cognate Fair Labor Standards Act support the conclusion reached by the judge. A United States District Court judge recently summarized the Federal case law. Recognizing that on-call time necessarily restricts in some measure the freedom of the employee, the judge wrote, "[E]very case that has addressed this issue, tells us that without some significant additional restriction on the employee's off-duty [i.e., on-call but non-working] time, such that the time can be said to have been spent primarily for the employer's benefit, the time will not be compensable." *Darrah* v. *Missouri Hy. & Transp. Commn.*, 885 F. Supp. 1307, 1313 (W.D. Mo. 1995).

The case before us is similar to *Kelly* v. *Hines-Rinaldi Funeral Home, Inc.*, 847 F.2d 147 (4th Cir. 1988), cert. denied, 493 U.S. 835 (1989), where the facts were undisputed. There the plaintiff was engaged by a funeral home to perform light housekeeping from 9:00 P.M. to 12:00 midnight and 6:30 A.M. to 8:30 A.M., six days a week. He was provided a rent-free apartment on the premises of the funeral home, and was required to stay on the premises during the night hours. Between midnight and 6:30 A.M. the plaintiff's only duty was to answer the telephone, and to go out and pick up a corpse if required. The plaintiff claimed overtime under the FLSA on the theory that he was employed to work from 9:00 P.M. to 8:30 A.M. The Court of Appeals concluded that nighttime interruptions were infrequent, and that the plaintiff was merely required to stay in his own residence during the night hours. In affirming the allowance of a defense motion for summary judgment, the court said, "[I]t is not realistic to assume that [the defendant funeral home] would employ someone for 69 hours per week, thereby incurring large overtime expense, to perform the tasks assigned to [the plaintiff]." *Id.* at 148. After reviewing the authorities from the Fourth, Seventh, Eighth, and Ninth Circuits, the court concluded that the requirement of remaining on the employer's premises, coupled with infrequent interruptions, do not convert non-working, on-call hours to compensable working hours. *Id.* at 148-149.

Also instructive is the recent decision in *Brekke* v. *Blackduck*, 984 F. Supp. 1209, 1219-1221 (D. Minn. 1997) ("[T]he relevant

inquiry focuses upon whether the on-call time 'is spent predominantly for the employer's benefit or for the employee's' " [citation omitted]; cases which depart from the general rule of not awarding compensation for on-call time where such time is spent predominantly for the employee's benefit "demonstrate . . . exceptional circumstances. . . ."). See *Bright* v. *Houston N.W. Med. Center Survivor, Inc.*, 934 F.2d at 676 ("[e]mployees who have received compensation for idle time generally have had almost no freedom at all" [citation omitted]); *Martin* v. *Ohio Turnpike Commn.*, 968 F.2d at 611 (plaintiffs failed to establish "severe restrictions" on the use of on-call time for personal pursuits); *Birdwell* v. *Gadsden, Ala.*, 970 F.2d at 807, 810 ("The question of whether the employees are working during [on-call] time for purposes of the FLSA depends on the degree to which the employee may use the time for personal activities. . . . [I]t is clear that an employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA"); *Berry* v. *County of Sonoma*, 30 F.3d 1174 (9th Cir. 1994), cert. denied, 513 U.S. 1150 (1995) (identifying seven relevant inquiries in "on-call" cases, but emphasizing the question whether the employee is free to engage in personal activities while on-call); *McIntyre* v. *Division of Youth Rehabilitation Serv.*, 795 F. Supp. 668 (D. Del. 1992); *Burnison* v. *Memorial Hosp., Inc.*, 820 F. Supp. 549, 556 (D. Kan. 1993) ("[T]he undisputed facts show that on-call time is spent primarily for the plaintiffs' benefit and therefore . . . the Hospital is entitled to summary judgment as a matter of law on plaintiffs' claims for on-call compensation"); *Cleary* v. *ADM Milling Co.*, 827 F. Supp. 472, 477 (N.D. Ill. 1993) ("[T]he undisputed evidence regarding the degree to which the plaintiffs are free to engage in personal activities while on-call and the agreements between the parties is so one-sided that ADM must prevail as a matter of law"); *Lurvey* v. *Metropolitan Dade County*, 870 F. Supp. 1570, 1579 (S.D. Fla. 1994) ("[I]t is clear that an employee's free time must be *severely restricted* for [on-call time] to be construed as work time for purposes of the FLSA" [emphasis added; citation omitted]).

We conclude that in the circumstances of this case, the one hundred four and three-quarters hours of weekly non-working, on-call time (one hundred twenty-three hours total on-call time, less eighteen and one-quarter hours of working time) is non-compensable time under G. L. c. 151.

There remains only the question whether the rent-free apartment effectively provided the plaintiffs with the minimum wage for the hours actually worked. In their complaint, the plaintiffs acknowledge that the value of the apartment was $700.00 per month. This is approximately $162.00 per week, which, at the then-minimum wage of $4.25 per hour, translates to 38.1 hours of paid working time each week.

As noted above, Aviad testified that the three nightly rounds took him a total of three and one-quarter hours, a total of sixteen and one-quarter hours for five weekday nights. Emergency calls averaged approximately 1.73 calls per week, see note 7, *supra*, and related text, but no evidence was offered by either party as to the amount of time required to respond to such calls. If we assume a generous two hours per week to respond to telephone calls, the actual working time required by the job and performed by the plaintiffs was approximately eighteen and one-quarter hours weekly.[14] The judge was correct in ruling, as a matter of law, that the plaintiffs "could not accumulate in any particular week sufficient working time to entitle them to more compensation than they received through their rent-free apartment."

The result is that the plaintiffs have no reasonable expectation of establishing their statutory claim,[15] and summary judgment was properly entered for the defendant on both counts of the complaint.[16]

*Judgment affirmed.*

---

[14]An alternative calculation would be as follows: the value of the apartment translates to 38.1 hours per week at minimum wage. As noted in the text, *supra*, weekly rounds equaled sixteen and one-quarter hours. Since it is implausible in the extreme that as much as 21.85 hours per week (38.1 less 16.25) would have been spent responding to the few emergency calls, the actual working time required by the job and performed by the plaintiffs could not realistically have approached anywhere near 38.1 hours weekly.

[15]As the plaintiffs are not entitled to overtime pay, we need not address the defendant's argument that the plaintiffs are exempt from the provisions of G. L. c. 151, § 1A, pursuant to § 1A(1) and/or § 1A(16).

[16]General Laws c. 149, § 148 (count II), requiring the prompt payment of wages earned, presents no issue on the facts of this case. The plaintiffs make no sufficient appellate argument to the contrary.