STEPHEN H. ANDERSON, Circuit Judge.
Plaintiffs-Appellees are 155 bus drivers employed by defendant-appellant, the City of Albuquerque (“City”).[1] Most of them work “split shifts,” in that they work a morning shift and a late afternoon shift, separated by a three to five-hour split shift period in which they are free to do what they wish, before reporting back at a specific location to begin their second shift. The drivers brought this action against the City, claiming that the City violated the Fair Labor Standards Act (“FLSA”), 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262, by failing to compensate them for (1) time spent on split shift periods and (2) time spent on City-operated shuttles going to and from the beginning and/or end points- (called “relief points”) of their driving shifts.
After both sides filed motions for summary judgment, the district court held that only the time traveling on City shuttles from a relief point after a driver’s first run of the day or to a relief point to begin a second run is compensable, thereby denying in part and granting in part both sides’ summary judgment motions.
We certified the City’s 28 U.S.C. § 1292(b) interlocutory appeal challenging the district court’s conclusion that shuttle time traveling to or from a relief point, either immediately preceding or immediately following a non-compensable split shift period, is compensable. The drivers filed a cross-appeal, challenging the district court’s conclusions that (1) aside from the shuttle time at either end, the split shift periods are non-compensable, and (2) time spent traveling to and from relief points at the beginning and end of the day are non-compensable.[2] We affirm.
BACKGROUND
The relevant facts are undisputed. In order to serve its customers most efficiently, the City must schedule more buses in the peak commute hours of early morning and late afternoon. Additionally, it must schedule routes so that drivers do not necessarily complete their routes where they started them. Accordingly, many City bus drivers work a morning shift and an evening shift, beginning and ending those shifts at different locations. The time in between the two shifts is the split shift period. 137 of the 155 plaintiff drivers have worked split shifts during the time period relevant to this lawsuit.
*1113 All City buses are housed overnight in the City garage. Many drivers begin their morning routes at the City garage and complete those routes at a far-off relief point. Many drivers also begin their afternoon or evening shift at a distant relief point and end up at the City garage. The distances between the garage and these relief points range from six blocks to many blocks.[3]
For many years, City bus drivers were responsible for providing their own transportation to and/or from the City garage, and/or their various relief points. The possibilities included driving their own vehicles, obtaining rides from family or friends, walking, or taking a fixed-route City bus. At some time during the 1980’s, pursuant to a collective bargaining agreement with the United Transportation Union Local 1745, the City began to provide a shuttle service to and from relief points. The shuttle service evolved into its current format-shuttle vehicles driven by designated and exclusive shuttle drivers. Thus, a driver may use a City shuttle to go to or from the City garage and any relief point, at any time during the day. The shuttle service is optional, although many drivers use it. The drivers are not obligated to do anything in particular while riding these shuttles. They stated in response to interrogatories that their activities aboard the shuttles ranged from sitting, to talking with the shuttle driver and other passengers, to simply “waiting.” Ex. D-6, Appendix of Pis. Resp. to Interrog. No. 23.
Bus drivers are not obligated to report either at the beginning or the end of the day, or the beginning or end of a shift, to the City garage if their particular route does not require it. In other words, each driver is obligated only to arrive on time at his or her starting point for a shift, and the City does not impose any requirements about where they go following the completion of a shift. The City has never compensated drivers for time spent going to or leaving relief points.
As indicated, most of the plaintiff drivers have worked split shifts. The length of the split shift period varies, but is usually between three and five hours. For purposes of this appeal, the split shift periods are at least one hour.[4]
Drivers are permitted to do anything they wish during their split shift periods, except drink alcohol. Drivers testified about the various things they did during these periods: some went home; some slept in City parks or in nearby air-conditioned buildings; some ran errands; some passed time in the City library or museum; some read; some ate; and one brought her mobile home and spent her split shift in that. If a bus driver was called to a meeting or required to' perform any work-related duty during his or her split shift period, the City compensated the driver for that time. Otherwise, the City has never compensated drivers for time spent on split shift periods.
The drivers brought this action under the FLSA, seeking unpaid overtime wages and an equal amount as liquidated damages, an injunction prohibiting future FLSA violations, and attorneys’ fees and costs. As indicated, both sides filed motions for summary judgment.[5] The district court held:
1. Time spent by Plaintiffs in traveling in City operated shuttles to relief point *1114 for their first or only bus run of the day and from their last or only bus run of the day is not hours worked under the Portal to Portal Act.
2. Time spent by Plaintiffs in traveling in City operated shuttles from a relief-point after their first run of the day or to a relief point for then* second run of a day when the Plaintiffs work a split shift is not subject to the Portal to Portal Act’s exclusion and is compensable.
3. Time spent which is one hour or more between split runs is not spent predominately for the benefit of the City and is not compensable. Period[s] of time of less than one hour between split runs present an unresolved fact issue.
4. The City and the individual Defendants in failing to compensate for the shuttle time described in paragraph two above had a good faith belief that their conduct did not violate the Fair Labor Standards Act and thus Plaintiffs are not entitled to liquidated damages.
5. Plaintiffs haye failed to prove that the City and individual Defendants acted wilfully with regard to their failure to compensate for the time described in paragraph two above. Therefore, the two year statute applies.
Order at ¶ ¶ 1-5, Appellant’s App. at 42-43.
Recognizing that “the controlling question herein is novel and has not been previously ruled upon in this circuit,” the district court granted an immediate appeal from its order. Id. at ¶ 6. We then granted the City’s petition for permission to appeal under 28 U.S.C. § 1292(b). The drivers thereafter filed notice of their cross-appeal.
DISCUSSION
I. Jurisdiction Over Drivers’ Cross-Appeal
The City sought and received permission to pursue an interlocutory appeal under 28 U.S.C. § 1292(b). The drivers did not seek permission to file their cross-appeal. Thus, we must consider whether we have jurisdiction over the cross-appeal.
“In order to consider the cross-appeal, we must exercise pendent appellate jurisdiction.” Armijo v. Wagon Mound Public Schs., 159 F.3d 1253, 1264 (10th Cir.1998). The exercise of pendent appellate jurisdiction is discretionary. Id. We have observed that the Supreme Court has held that “pendent appellate jurisdiction generally should not be exercised over otherwise interlocutory appeals.” Id. (citing Swint v. Chambers County Comm’n, 514 U.S. 35, 50-51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)). We, however, interpret Swint to permit the exercise of jurisdiction over such appeals in limited circumstances: “ ‘pendent appellate jurisdiction might still be appropriate where the otherwise nonappealable decision is “inextricably intertwined” with the appealable decision, or where review of the nonappealable decision is “necessary to ensure meaningful review” of the appealable one.’ ” Id. (quoting Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir.1995) (quoting Swint, 514 U.S. at 51, 115 S.Ct. 1203)). We have further interpreted “inextricably intertwined” to include only situations where “the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal-that is, where the appellate resolution of the collateral appeal necessarily resolves the pendent claim as well.” Moore, 57 F.3d at 930.
In this case, the City’s interlocutory appeal, properly before us, challenges the district court’s conclusion that the shuttle time to and from relief points at either end of a split shift period is compensable. The drivers’ cross-appeal challenges the district court’s conclusion that the entire split shift period is not compensable, as well as its conclusion that shuttle time to and from relief points for the first and last shifts of the day is not compensable. While it is clear that resolution of the issue of com-pensability for the entire split shift period *1115 could subsume the issue of whether a part of that period (the shuttle time to or from a relief point at the beginning or end of the split shift period) is compensable— particularly if we hold that the entire period, from the end of a driver’s first run to the beginning of his second run is compen-sable — it is less obvious that the converse is true. We nonetheless hold that we have jurisdiction over the drivers’ cross-appeal because it is inextricably intertwined with the City’s appeal. This is so because the resolution of the City’s appeal requires us to analyze the drivers’ entire work day, including any and all time shuttling to and from driving shifts.
As indicated, the City’s appeal addresses the two periods of time at the beginning and end of the split shift period. Thus, it involves an analysis of two sub-periods of time within the entire split shift period. Resolution of the compensability of those two sub-periods necessarily requires an analysis of the entire period, if only because we begin our analysis by considering how we characterize that entire split shift period. Moreover, the district court’s conclusion, challenged by the City’s interlocutory appeal, that only those two sub-periods are compensable necessarily includes the conclusion that the remainder of the split shift period is not compensable. If we affirm the district court’s conclusion that only those two sub-periods are com-pensable, we have by implication held that something less than the entire split shift period is compensable.
However, the drivers’ cross-appeal also challenges the district court’s conclusion that shuttle time to relief points for the drivers’ first or only bus run of the day and from their last or only bus run of the day is excluded from a driver’s compensa-ble work day under the Portal-to-Portal Act. We have observed that “the ‘narrow avenue for the continued use of pendent appellate jurisdiction left open by Swint ’ does not apply if a ‘ruling on the merits’ of the interlocutory appeal does not resolve all of the remaining issues presented by the pendent appeal.’ ” Armijo, 159 F.3d at 1265 (quoting Moore, 57 F.3d at 930) (emphasis added). Accordingly, to assume jurisdiction over the drivers’ cross-appeal, we must find that this issue also is inextricably intertwined with the City’s appeal. We hold that it is.
To resolve the issue of the compensability of the shuttle time to and from a beginning or ending or only bus run, we must analyze the structure of the drivers’ entire work day — i.e., two shifts separated by a split shift, with the drivers beginning and/or ending at relief points. Characterizing the work day, for purposes of compensation under the FLSA and/or the Portal-to-Portal Act, necessarily involves characterizing each part of the drivers’ day, including all shuttle time to and from relief points.
We therefore conclude that all issues raised in this appeal and cross-appeal are inextricably intertwined and require a comprehensive analysis of the structure of the drivers’ work day.[6]
*1116 II. Merits of Appeal and Cross-Appeal
“We review summary judgment determinations de novo, applying the same standard used by the district court under Fed. R.Civ.P. 56(c).” Ball v. City of Dodge City, 67 F.3d 897, 899 (10th Cir.1995).
Generally, the FLSA requires employers to pay employees a minimum wage for a forty-hour work week, as well as overtime for hours worked over forty per week. See 29 U.S.C. §§ 206, 207. The FLSA does not define hours worked or employment, but Department of Labor regulations, and case law, provide some guidance.[7] “Work is ‘physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer.’ ” Reich v. IBP, Inc., 38 F.3d 1123, 1125 (10th Cir.1994) (quoting Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944)).[8]
By contrast, “[pjeriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked.” 29 C.F.R. § 785.16. Each case is fact-specific: “Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all the facts and circumstances of the case.” Id. “[T]he test for whether an employee’s time constitutes working time is whether the ‘time is spent predominantly for the employer’s benefit or for the employee’s.’ ” Gilligan v. City of Emporia, 986 F.2d 410, 412 (10th Cir.1993) (quoting Boehm v. Kansas City Power & Light Co., 868 F.2d 1182, 1185 (10th Cir.1989) (quoting Armour & Co. v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944))).
The FLSA was amended by the Portal-to-Portal Act, 29 U.S.C. §§ 251-262. Under the Portal-to-Portal Act, employers are not obligated to compensate employees for “walking, riding or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform,” as well as “activities which are preliminary to or postliminary to said principal activity or activities,” where such “traveling” or “activities” “occur either pri- or to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.” 29 U.S.C. § 254(a). By contrast, travel that is “part of [an employee’s] principal activity” is compen-sable hours worked. 29 C.F.R. § 785.38. The Supreme Court has held that “activities performed either before or after the regular work shift ... are compensable ... if those activities are an integral and *1117 indispensable part of the principal activities for which [the employees] are employed.” Steiner v. Mitchell, 350 U.S. 247, 256, 76 S.Ct. 330,100 L.Ed. 267 (1956); see also Baker v. Barnard, Constr. Co., 146 F.3d 1214, 1216 (10th Cir.1998). “Whether an activity is preliminary or postliminary to principal activities for purposes of § 254(a)(2) of the Portal-to-Portal Act is a mixed question of law and fact because the precise nature of the employee’s duties is a question of fact, while application of the FLSA to those duties is a question of law.” Baker, 146 F.3d at 1216.
The Portal-to-Portal Act was subsequently amended by the Employee Commuting Flexibility Act of 1996 to clarify that otherwise non-compensable commuting to work is not compensable merely because the employee uses his employer’s vehicle.[9] Each case turns on the particular facts and circumstances involved.
As indicated, there are three periods of time in dispute in this case. We examine each one.
A. Split shift period
We begin by considering the entire split shift period in excess of one hour. The district court held that the split shift period was not compensable. We agree.
The drivers argue that the split shift period is compensable waiting time under the FLSA. The Department of Labor regulations, following case law, analyze waiting time by drawing a distinction between an employee who is “waiting to be engaged” as opposed to one who is “engaged to wait.” An employee is on duty, is engaged to wait, where “waiting is an integral part of the job.” 29 C.F.R. § 785.15. Examples include the following: “[a] stenographer who reads a book while waiting for dictation, a messenger who works a crossword puzzle while awaiting assignments, fireman who plays checkers while waiting for alarms and a factory worker who talks to his fellow employees while waiting for machinery to be repaired.” Id.
On the other hand, an employee is off duty, is waiting to be engaged, where he is “completely relieved from duty” and where the time period is “long enough to enable him to use the time effectively for his own purposes.” 29 C.F.R. § 785.16(a). Further, “[h]e is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived.” Id. Those regulations, and the cases from which they are derived, compel the conclusion that -the bus drivers were off duty during their split shift periods.
The undisputed evidence shows that most drivers had a three to five hour period in which they were free to do anything they chose except drink alcohol, knowing that they would “not have to commence work until a definitely specified hour has arrived.” Id. Most of them were able to “use the time effectively for [their] own purposes” without restrictions. Id. The fact that the split shift period is less convenient or less desirable than a straight shift does not mean that the drivers are on duty and deserving compensation during that shift; it simply means that their work schedule is not ideal.[10] We therefore hold *1118 that the drivers’ split shift periods are not horn's worked under the FLSA.[11]
B. Shuttle Times
We must consider the compensability of two different shuttle times. We address each in turn. .
1. To and from relief points at either end of split shift period
Although we have held that the split shift periods in general are not compensable hours worked, we do not thereby necessarily exclude the possibility that the shuttle time drivers spend either leaving their relief point at the beginning of their split shift period, or going to their relief point at the end of that period, could be compensable. This is so because, while we have held that resolution of this latter issue is intertwined with our resolution of the entire split shift period, we cannot overlook the possibility that some distinction between the two periods of time may make one compensable and the other not. The district court held the shuttle time at issue here was compensable, finding that “[t]he riding of shuttles is integral and indispensable to this system of dispatching and relieving drivers at different times and remote locations throughout the city.” Partial Tr. of Proceedings at 44, Appellant’s App. at 33. We agree.[12]
The City’s basic argument about this shuttle time is that “[tjhere is no meaningful distinction for FLSA purposes between split periods and travel time to and from *1119 split periods.” Appellant’s Br. at 26. In either case, the City claims, drivers are off duty, free to engage in personal pursuits. We disagree.
As indicated above, “[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked.” 29 C.F.R. § 785.16. (emphasis added). We believe there is a meaningful distinction between time spent shuttling to or from a relief point, where a working shift just ended or is about to begin, and the remainder of the drivers’ split shift periods, during which they have an extended block of time in which to pursue, as most testified they do, purely personal pursuits. While shuttling to or from a relief point, the drivers are not free to do whatever they wish-they must spend that time traveling to or from a location dictated by the City, and situated to serve the City’s need to provide an efficient and useful bus transportation system. They travel to and from such points as a necessary part of their principal activity of driving particular bus routes for the City. While it is true that the entire split shift structure also serves the City’s need to provide an efficient and useful bus transportation system, the drivers’ ability to use the remainder of the split shift period, aside from the shuttle time to and from relief points, for a wide range of personal pursuits makes a critical difference.
The exemption from hours worked provided by the Portal-to-Portal Act makes no difference to our conclusion. That Act exempts from compensable hours time spent “traveling to and from the actual place of performance of the principal activity or activities ... either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities,” as well as activities which are “preliminary” or “postliminary” to the employee’s principal activity. 29 U.S.C. § 254(a); see also 29 C.F.R. § 785.34. The drivers’ “principal activity” is the driving of their shifts. This is so whether they drive a split shift or a straight shift within a single workday. “Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.” 29 C.F.R. § 785.38. In our view, the shuttle time to and from relief points at either end of the split shift period is travel time which is “part of [the drivers’] principal activity.”
Indeed, we would, in essence, be holding that each shift is a principal activity in a separate workday, were we to hold that shuttle time to and from each shift is excluded as ordinary commuting time under the Portal-to-Portal Act. The regulations define “workday” under the Act as follows:
“Workday” ... means ... the period between the commencement and completion on the same workday of an employee’s principal activity or activities. It includes all time within that period whether or not the employee engages in work throughout all of that period.
29 C.F.R. § 790.6. We agree with the district court that we should not turn a single 24-hour period into essentially two 24-hour periods, simply because the drivers drive two shifts separated by a non-com-pensable off-duty period.[13]
The City argues that the split shift period is like a “bona fide meal period” which is not compensable under the FLSA provided the employee is “completely relieved from duty.” 29 C.F.R. § 785.19(a). It *1120 argues that, just as employees are not compensated if they choose to travel to a lunch destination, so too a driver should not be compensated when he travels to and from his split shift period. The City overlooks the fact that an employee can obviously choose to travel or not travel to eat lunch, but the drivers must get to and from diverse relief points if they are to perform their principal activity of driving the particular bus route assigned them. The mere fact that the split shift period is not compensable, just as a bona fide meal period is not, does not mean that all activity related to that period, including any associated travel, should be treated the same.
We therefore hold that the district court, on the undisputed facts of this case, properly granted summary judgment to the drivers on their claim for compensation for time spent traveling on City shuttles to and from relief points at the beginning and end of their split shift periods.[14]
2. To and from first or last or only shift of day
Finally, the drivers seek compensation for time spent shuttling to and from either their first or last bus run of the day or, as the case may be, their only bus run of the day. The district court denied relief on this claim, finding that it is excluded from hours worked under the Portal-to-Portal Act. We agree.
This is classic commuting-to-work time, excluded from compensation by the Portal-to-Portal Act. The fact that the drivers use City operated shuttles is irrelevant.[15] Just as with any commute, the undisputed evidence in this case establishes that the drivers are obligated only to appear on time at the particular place from which their first bus runs begins, whether that is the City garage or some relief point. At the end of the day, following their last bus run, they may go home any way they choose, by any means they choose. The fact that some of them may choose to use a City shuttle to go to or from the City garage, as a part of their commute at the beginning or end of their workday, does not transform that time into hours worked under the FLSA and the Portal-to-Portal Act. See Baker v. GTE North Inc., 110 F.3d 28, 30-31 (7th Cir.1997) (holding that an employee who drove his employer’s cai-to the main office at the end of the day, and then drove his own car home, could not be compensated for any of the travel time); Vega v. Gasper, 36 F.3d 417, 425 (5th Cir.1994) (holding that farm workers who chose to ride employer’s bus for llk to 2 hours to and from fields, but were not obligated to ride such buses, were engaged in non-compensable “home-to-work-and-back commute”).
Moreover, the fact that a driver may end his workday at a relief point, *1121 where his own vehicle is unavailable, does not transform what would otherwise be a simple work-to-home commute into com-pensable hours worked. “Ordinary home to work travel is not compensable under the FLSA, regardless of whether or not the employee works at a fixed location.” Imada v. City of Hercules, 138 F.3d 1294, 1296 (9th Cir.1998). See 29 C.F.R. § 785.35 (“An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites.”). While it may be more awkward or inconvenient to arrange for transportation to and from work where the employees, like the drivers here, may begin or end their work day at diverse locations, such awkwardness or inconvenience does not change an otherwise non-compensable commute into compensable work time.
CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s order, although we do not address the district court’s conclusions on liquidated damages and the two-year statute of limitations.

. The other named plaintiffs are the United Transportation Union Local 1745, its chairman, Robert C. Gutierrez, and its president, John D. Hunter. Unless otherwise indicated, we refer to all the plaintiffs collectively as the drivers or the bus drivers. The other named defendants are Martin Chavez, the mayor of Albuquerque, and Lawrence Rael, the City's chief administrative officer. Unless otherwise indicated, we refer to all the defendants collectively as the City.

. The drivers also cross-appeal the court's denial of liquidated damages and its refusal to apply an extended statute of limitations. The FLSA provides that an employer who violates the Act by failing to pay compensable wages is ordinarily liable for the unpaid wages and “an additional equal amount as liquidated damages.” 29 U.S.C. § 216(b). However, if the employer had a good faith belief that its
actions did not violate the FLSA, the court may, in its sound discretion, decline to award liquidated damages. See 29 U.S.C. § 260; see also Department of Labor v. City of Sapulpa, 30 F.3d 1285, 1289 (10th Cir.1994). Additionally, ordinarily a two-year statute of limitations applies to violations of the FLSA, unless the employer acted willfully, in which case a three-year limitations period applies. See 29 U.S.C. § 255(a); see also Brinkman v. Department of Corrections, 21 F.3d 370, 372 (10th Cir.1994).
While the drivers raised thpse issues in their cross-appeal and argued them in their opening brief, they assert in their reply brief that these issues involve factual disputes and are inappropriately resolved on interlocutory appeal. We interpret this as a withdrawal of these issues from the cross-appeal. We therefore do not address them.

. The longest shuttle time from a relief point to the City garage is nineteen minutes.

. 113 plaintiff drivers have never had a split shift period of less than one hour during the time relevant to this lawsuit. The City did not move for summary judgment with respect to the remaining 42 plaintiff drivers, twelve of whom have had or may have had split shift periods of less than one hour, and thirty of whom worked "extra board" bids where they substituted for absent drivers on various runs.

.The City filed a motion for partial summary judgment. As indicated, the City did not move for summary judgment as to 42 of the drivers, who either had split shift periods of less than an hour or who worked extra board bids.

. Cases in which we and other courts have declined to exercise pendent appellate jurisdiction are distinguishable because, unlike this case, they involved separate claims under separate statutory schemes or legal theories. In Armijo, for example, the plaintiffs sued the defendants for alleged violations of 42 U.S.C. § 1983 and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400-1487 ("IDEA”). The defendants filed an interlocutory appeal from the district court's denial of their summary judgment motion seeking qualified immunity from the "danger creation” § 1983 claim, and the plaintiffs sought to cross-appeal the district court's grant of sum-maiy judgment to the defendants on the IDEA and failure to train § 1983 claims. We refused to exercise pendent jurisdiction over the plaintiffs' cross-appeal, noting that a ruling on the qualified immunity claim would not resolve the plaintiffs’ quite different and distinct IDEA claims.
Similarly, in Foote v. Spiegel, 118 F.3d 1416 (10th Cir. 1997), we declined to exercise pendent appellate jurisdiction, describing as follows the difference between the claims sought to be appealed:
[Rjesolution of the properly appealable issues-the appealable portion of the denial of qualified immunity for the continued road-
*1116 side detention and the denial of qualified immunity for the strip search-will not necessarily resolve Foote’s claims that the district court erred in denying summary judgment in her favor on the legality of the initial stop and arrest.
Id. at 1423. See Murphy v. Arkansas, 127 F.3d 750, 753-54 (8th Cir. 1997) (declining to exercise pendent appellate jurisdiction over cross-appeal involving Title VII and ADEA claims, noting that those claims "are not in the least bit intertwined with issues of Eleventh Amendment and qualified immunity”).
Here, by contrast, instead of involving completely separate claims under different statutes, the appeal and cross-appeal involve the question of whether different parts of a bus driver’s work day are compensable under a single statutory scheme.

. We have noted that "FLSA regulations ‘constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.’ ” Lamon v. City of Shawnee, 972 F.2d 1145, 1151 n. 7 (10th Cir. 1992) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).

. The Supreme Court subsequently ruled that there need not in fact be any "exertion” for an activity to be work. "[A]n employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen.” Armour & Co. v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944).

. 29 U.S.C. § 254(a) now includes the following:
[T]he use of an employer’s vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee’s principal activities if the use of such vehicle for travel is within the normal commuting area for the employer’s business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

. As all parties acknowledge, there is very little case law on the compensability of split shifts, although such work schedules are fairly common in the transportation industry and in other industries like the restaurant business and mining. The few cases we have found support our conclusion. See Walling v. *1118 Clinchfield, 64 F.Supp. 347, 350 (W.D.Va.) (holding that period between two mining shifts is not hours of work where the miners were "free to leave the mines, go home, or do anything they pleased”), aff'd, 159 F.2d 395 (4th Cir.1946); Bohn v. B & B Ice & Coal Co., 63 F.Supp. 1020, 1023 (W.D.Ky.1946) (holding that period between two shifts is not hours worked when the employee was away from the plant, even though he was subject to being called back).
There are more cases addressing the issue of whether a particular on-call arrangement entitles an employee to compensation for on-call time. The regulations state that "[a]n employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.’ " 29 C.F.R. § 785.17. The fact that courts have held that employees who are on-call, and definitely more restricted in their ability to pursue personal pursuits than the bus drivers here, are nonetheless not on duty, further supports our conclusion. See, e.g., Dinges v. Sacred Heart St. Mary's Hosps., Inc., 164 F.3d 1056 (7th Cir.1999) (holding that emergency medical technicians who must live within seven minutes of hospital, cannot engage in any activities which would prevent them from hearing and responding promptly to pager, and cannot drink alcohol are not "working” while on call). As we have stated, "[o]n call time is compensable if the on call requirements are so restrictive they interfere with employees' personal pursuits.” Armitage v. City of Emporia, 982 F.2d 430, 432 (10th Cir.1992). Compare Renfro v. City of Emporia, 948 F.2d 1529, 1531-32 (10th Cir.1991) (holding that on-call time is compensable because firefighters averaged four to five callbacks per day, had to respond within 20 minutes, had great difficulty arranging shift trades, and were disciplined if they were late or failed to respond to a callback) with Gilligan v. City of Emporia, 986 F.2d 410, 411-13 (10th Cir.1993) (holding that on-call time is not compensable when employees were called back less than once a day, had 30 minutes to respond, and were free to pursue personal activities with little interference).

. Pursuant to their collective bargaining agreement, the City pays drivers who drive split shifts a "split shift differential,” an additional 25<f to 35c per hour, depending on the length of the total run. The drivers argue that the City's payment of this split shift differential constitutes an acknowledgment that the split shift period is compensable. We disagree. The fact that the drivers and the City agreed in their collective bargaining agreement to pay more for the less desirable split runs does not control whether the split shift period is compensable hours worked under the FLSA.

. The district court held that only time spent on City shuttles to or from relief points at either end of a split shift period is compensa-ble. The court stated that if a driver "is able to obtain transportation to or from a relief point by some' way other than a shuttle between his shift, I conclude it is not compensa-ble time.” Partial Tr. of Proceedings at 45, Appellant’s App. at 34. The drivers do not appear to challenge this.

. The City conceded at oral argument that a driver whose runs were not separated by a non-compensable period of time would be entitled to compensation for time spent traveling from one bus run to the next. The fact that the City structures a driver’s whole day to include an off-duty period between such travels should not alter the characterization of the travel time, if the travel time in either case is a part of the driver's principal activity, and is required because it benefits the City.

. We note that, when considering workers' compensation claims for injuries incurred while traveling to or from a split shift period, a few courts have held that such injuries occurred during the course of the employee’s employment. See, e.g., Howard v. City of Detroit, 377 Mich. 102, 139 N.W.2d 677, 679-80 (1966) (holding that bus driver injured while traveling to commence his second shift was within the course of his employment); Duncan v. South Central Bell Tel. Co., 608 So.2d 649, 651-52 (La.Ct.App.1992) (holding that employee killed while leaving first shift was in the course of her employment). But see Cherewick v. Morris G. Laramie & Son, 295 Mich. 570, 295 N.W. 268, 269 (1940) (holding that employee killed while traveling to second shift was not in the course of his employment). As
one court has described the effect of working split shifts;
[P]laintiff was effectively working a split-shift schedule, which exposed him to hazards of travel to and from the workplace greater than those encountered by an ordinary employee who reports for work and returns home only once each day.
Miles v. Russell Mem. Hosp., 202 Mich.App. 6, 507 N.W.2d 784, 786 (1993). Similarly, the bus drivers in this case are exposed to twice the commuting as a driver who drives a straight shift.

. The Employee Commuting Flexibility Act of 1996, § 2101 of Pub.L. 104-188, 110 Stat. 1755, 1928, which amended the Portal-to-Portal Act, makes that clear.