# United States Court of Appeals for the Federal Circuit

———————————

**ROBERT BRIDGES, MARK COTE, JOSHUA FISH, RANDALL HALL, BRIAN ACKLEY, ERIK ANDERSON, TAYLOR ARBUCKLE, DARLENE BECK, CHRISTOPHER BOERTJE, DE'LANO BOLES, ROBERT CUNDIFF, AARON FULSOME, MARC HARPER, PAUL HERRMANN, NICHOLAS IZYDOREK, MICHAEL KOHLMAN, LUKE LANGMEYER, RYAN LEA, TROY LICATA, RAYMOND MATERNI, KENNETH MAXIE, RICKY MYERS, RICHARD NATION, GRAHAM NICHOLS, JORGE OTERO, MARK ROCHE, SAMUEL RUTTER, EDWARD SADZEWICZ, RANDALL SIZEMORE, NICHOLAS SLOCUM, COREY SMITH, ANTHONY ST. CLAIR, PATRICK STYLES, DANIEL SWETZ, JAMES TORRES, ROBERT TUCKER, JONATHON TULL, SALATIEL VASQUEZ, MATTHEW WERT, PATRICK WILSON, TRAVIS WITTER, JAMES HERMANSEN,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2022-1140

———————————

Appeal from the United States Court of Federal Claims in No. 1:18-cv-00727-SSS, Judge Stephen S. Schwartz.

———————————

Decided: November 29, 2022

———————————

DAVID RICKSECKER, McGillivary Steel Elkin LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by GREGORY K. MCGILLIVARY.

ROBERT R. KIEPURA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

———————————

Before NEWMAN, LOURIE, and PROST, *Circuit Judges.*

PROST, *Circuit Judge.*

Robert Bridges et al. (collectively "Appellants" or "officers") filed suit in the U.S. Court of Federal Claims ("Claims Court") arguing that their federal employer must compensate them for certain travel time under the Fair Labor Standards Act of 1938 ("FLSA"), *see* Pub. L. No. 75-718, 52 Stat. 1060, and governing Office of Personnel Management ("OPM") regulations. The Claims Court disagreed and granted the government's motion for summary judgment. *Bridges v. United States*, 156 Fed. Cl. 129 (2021). We affirm.

BACKGROUND

I

Appellants are correctional officers at a federal prison in Milan, Michigan. They typically work in eight-hour shifts, two types of which are relevant here: a regular prison shift and a voluntary overtime hospital shift. The prison shifts are scheduled two weeks in advance through

a roster system, but the hospital shifts are scheduled differently because they arise only when a prison inmate is transferred to a local hospital for care.

Since the need for hospital shifts varies depending on how many inmates are in the hospital and how long the inmates stay for treatment, the officers' supervisors create hospital shifts as needed. And when there is a need, the supervisors turn to a list of correctional officers who volunteered to be contacted about these overtime shifts, which provide overtime pay. The supervisors then run down the list of officers and contact each officer one-by-one, starting at the top. Once an officer accepts the voluntary shift, that officer is placed at the bottom of the list.[1]

It takes about twenty minutes to drive from the prison to each of the local hospitals, and prison shifts and hospital shifts are currently staggered by one hour.[2] For example, for a prison shift that runs from 10:00 p.m. on a Monday to 6:00 a.m. the following Tuesday, the nearest-in-time hospital shift would start at 7:00 a.m. on Tuesday. An officer might work a prison and hospital shift back-to-back, or an officer could end a prison shift on Tuesday at 6:00 a.m. and then volunteer for the hospital shift that starts at 3:00 p.m.

---

[1]    If no officer voluntarily accepts the shift, then it is assigned by a supervisor as a mandatory shift. Compensation for travel time between a prison shift and a mandatory hospital shift is not at issue in this appeal, though. *See* Appellants' Br. 6–7.

[2]    While the minimum time between prison and hospital shifts seems to have changed over the course of litigation, the parties agree that the analysis is the same regardless of those changes, so we discuss the shifts only as they are scheduled now. *See Bridges*, 156 Fed. Cl. at 131–32.

later that day.  At issue in this case, though, are *only* the back-to-back prison and voluntary hospital shifts.

## II

Appellants filed a complaint in the Claims Court asserting that, pursuant to the FLSA and relevant OPM regulations, the prison must compensate them for the travel time between a prison shift and a hospital shift, where these shifts are back-to-back and the hospital shift is voluntary.  The officers asserted that this travel time is a "principal activity," travel during a "continuous workday," or other "hours of work," for which the FLSA mandates compensation.

Appellants and the government filed competing motions for summary judgment.  The Claims Court granted the government's motion and denied Appellants'.  The officers appeal, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the Claims Court's grant of summary judgment de novo.  *Loc. Okla. Bank, N.A. v. United States*, 452 F.3d 1371, 1376 (Fed. Cir. 2006).  Because the Claims Court properly determined that the FLSA does not mandate compensation for the travel time at issue as a matter of law, we affirm.  Appellants' travel time is not (I) a "principal activity," *see* 5 C.F.R. § 550.112(a); (II) travel during a "continuous workday," *see IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005); or (III) other "hours of work," *see* 5 C.F.R. §§ 551.401(a), 551.412(a), 551.422(a).

## I

The FLSA requires that employers pay covered employees for all "hours of work," including time spent performing "principal activities."  *See* 5 C.F.R. §§ 551.401(a), 551.411(a).  "Principal activities are the activities that an employee is employed to perform."  *Id.* § 550.112(a).

Appellants assert that their travel between a regular prison shift and an immediately following voluntary hospital shift is such a principal activity. We disagree.

The Portal-to-Portal Act of 1947 indicates that the officers' travel in this case is at least one step removed from their principal activities. *See* Pub. L. No. 80-49, 61 Stat. 84 (codified at 29 U.S.C. §§ 251–62). Congress passed the Portal-to-Portal Act in part to explicitly exclude certain travel from the employer liability created by the FLSA. Relevant here, the Portal-to-Portal Act clarifies that travel "to and from the actual place of performance of the principal activit[ies]" is not hours of work. 29 U.S.C. § 254(a)(1). Here, no one disputes the officers perform their principal activities at the prison and local hospitals. And therein lies at least one degree of separation: Congress distinguished the "to and from" travel between such places from the places themselves, where "the principal activit[ies]" are "perform[ed]." *Id.* That means the officers' travel in this case cannot be part and parcel of their principal activities.

Even Appellants appear to admit that their principal activities don't include this travel: they repeatedly characterize their principal activities only as guarding inmates and providing security. *See* Appellants' Br. 34; Reply Br. 7; *see also Bridges*, 156 Fed. Cl. at 135 ("The parties appear to agree that a [p]rison employee's principal activity is guarding prisoners . . . ."); J.A. 8. And that makes sense. Appellants are, after all, correctional officers in a prison. Guarding inmates and providing security is the kind of work they are "employed to perform." 5 C.F.R. § 550.112(a).

Appellants nevertheless argue that their travel is a principal activity under 5 C.F.R. § 550.112(a). *See* Appellants' Br. 34 ("[T]he correctional workers' principal activities . . . start[] at the prison and end[] once relieved from the hospital overtime assignment."). For this assertion, the officers rely on §§ 550.101(c) and 550.112(a), which provide

that "activities performed by an employee during periods of irregular or occasional overtime work authorized under [5 C.F.R.] § 550.111" are included in "[t]ime spent in principal activities," *id.* § 550.112(a), "for the purpose of" computing hours of overtime work, *id.* § 550.101(c). The officers argue that the travel at issue here is "during" their overtime hospital shifts, which are "authorized under § 550.111." *See* Appellants' Br. 32 ("The hospital assignments and related travel at issue here are compensable irregular or occasional overtime . . . ."). But both premises of this argument are wrong. First, the officers' travel in this case isn't "during" their hospital shift work—overtime or otherwise—because Appellants haven't shown that it's "hours of work."[3] *See* 29 U.S.C. § 254(a)(1); *infra* Parts II & III. And second, the officers' hospital shifts are not "authorized under [5 C.F.R.] § 550.111." 5 C.F.R. § 550.112(a). As the Claims Court noted, § 550.111 implements the Federal Employees Pay Act ("FEPA"), which relates to employees *not* covered by the FLSA. *Bridges*, 156 Fed. Cl. at 135 n.8 (first citing 5 U.S.C. § 5542(a); and then citing *Doe v. United States*, 372 F.3d 1347 (Fed. Cir. 2004)); J.A. 9. Section 550.101(c) reiterates this, stating that § 550.111 "do[es] not apply" to employees covered by the FLSA, like the officers here. 5 C.F.R. § 550.101(c). That means Appellants' overtime hospital shifts cannot be "authorized under § 550.111" because § 550.111 is inapplicable to them.

II

Travel during a "continuous workday" must also be compensated under the FLSA. *Alvarez*, 546 U.S. at 37. Appellants argue that their travel is during a "continuous

---

[3]    The question is not, as the officers assert, "exactly" how many hours of overtime the officers work. Reply Br. 10 (citing 5 C.F.R. § 550.101(c)). The question is if that travel time is hours of work at all under the FLSA and OPM regulations.

workday" and that determining otherwise would contradict Department of Labor ("DOL") regulations. *See* Appellants' Br. 17 (arguing that OPM regulations "are required to 'harmonize . . . with [DOL] regulations'" (quoting *Billings v. United States*, 322 F.3d 1328, 1334 (Fed. Cir. 2003))). We disagree.

As an initial matter, we note that Appellants' continuous-workday argument appears to rely on an incorrect assumption about the definition of a "continuous workday." Appellants seem to assume that their "workday" can only be defined as starting when the prison shift starts and ending when the immediately following hospital shift ends and that those shifts, together, thus form a "continuous workday."[4] But this assumption is mistaken. A "continuous workday" in this context is defined by Congress, OPM, and the Supreme Court, which have all defined a "continuous workday" by the start and stop of "principal activities."[5] So

---

[4]   To avoid confusion, we use "continuous workday" to refer to the legal definition of a single workday and "workday" to refer to Appellants' colloquial understanding of a single workday.

[5]   In the Portal-to-Portal Act, Congress made clear that the workday was legally bounded by the start and stop of principal activities. 29 U.S.C. § 254(a) (precluding compensation for certain travel that "occur[s] either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities"). OPM and the Supreme Court follow the same definition. 5 C.F.R. § 551.411(a) (defining "workday" as "the period between the commencement of the principal activities that an employee is engaged to perform on a given day[] and the cessation of the principal activities for that day" where a "workday is not limited to a calendar day or any other 24-hour period"); *Alvarez*, 546 U.S. at 37

Appellants' two-shift "workday," as they think of it, need not be a "continuous workday," legally. Indeed, § 551.412(b) explicitly contemplates what amounts to non-continuous workdays: it recognizes that two blocks of "compensable . . . hours of work," like those book-ended by principal activities, may nonetheless be separated by a non-compensable activity. 5 C.F.R. § 551.412(b). This principal-activities-based definition of "continuous workday" is also consistent with OPM's instruction that the boundaries of a workday are "not limited to a calendar day or any other 24-hour period." *Id.* § 551.411(a).

With that clarification in mind, we turn now to Appellants' argument that determining that their travel is not during a "continuous workday" would create disharmony between OPM and DOL regulations. For this argument, Appellants rely on DOL's 29 C.F.R. § 785.38 as interpreted and applied in *Albuquerque*. *See United Transp. Union Loc. 1745 v. City of Albuquerque*, 178 F.3d 1109 (10th Cir. 1999).

*Albuquerque* involved city bus drivers covered by the FLSA but under the DOL regulatory regime. At issue were the bus drivers' "split shifts"—a morning and an afternoon shift usually separated by three to five hours. *Id.* at 1112–13. The typical morning shift started at the city garage and ended at a "distant relief point" while the afternoon shift often started at a "distant relief point" and ended at the city garage. *Id.* at 1113. As is relevant to this case, the bus drivers sought compensation under the FLSA for two specific employer-provided shuttle times: (1) from the relief point to the city garage at the end of the morning shift and (2) from the city garage to the relief point at the start of the afternoon shift. *Id.* at 1118–20. The Tenth Circuit

(defining "continuous workday" as "the beginning of the employee's first principal activity" to "the end of the employee's last principal activity").

determined that compensation for these shuttle times was not barred by the Portal-to-Portal Act's commuting-time exclusion. *Id.* at 1119 (citing 29 U.S.C. § 254(a)). Instead, the Tenth Circuit concluded that the shuttle times fell under DOL's regulatory provision providing compensation for "travel from job site to job site *during the workday*," *id.* (emphasis added) (quoting 29 C.F.R. § 785.38), because the shuttle times were "part of the drivers' *principal activity*," *id.* (emphasis added) (cleaned up).

Appellants argue that failing to read OPM's regulations as providing compensation for the travel at issue here would render them contrary to DOL's "job site to job site" regulation as interpreted and applied in *Albuquerque*. We disagree. Like OPM, DOL defines a continuous workday by the start and stop of principal activities. 29 C.F.R. § 790.6(b); *see also* Appellants' Br. 18 (conceding that OPM's and DOL's definitions of a "continuous workday" are "similar"). So rather than point to disharmony between OPM and DOL regulations, Appellants point us to harmony: given our determination that the travel here is not part of the officers' principal activities, DOL's "job site to job site" provision also would not provide compensation because the officers' travel between shifts does not occur during a "continuous workday" as defined by both OPM and DOL.

## III

OPM regulations additionally outline various "hours of work" that must be compensated pursuant to the FLSA. *See* 5 C.F.R. § 551.401(a). Appellants argue that their travel time falls within certain OPM-defined "hours of work." We disagree.

Appellants primarily offer three different regulatory bases to assert that their travel time between shifts constitutes other "hours of work" within the OPM regulatory regime, but each basis suffers from the same fundamental flaw: the officers' assertion that their travel is "hours of

work" boils down to the assertion that commuting is "hours of work." But that's precisely contrary to the Portal-to-Portal Act's instruction that commuting time—i.e., time spent "traveling to and from the actual place of performance of the principal activit[ies]," 29 U.S.C. § 254(a)(1)—is not covered by the FLSA, and the officers fail to provide any kind of limiting principle that distinguishes the necessity of the travel at issue in this case from the general necessity of commuting.[6]

To illustrate, we look at the three bases individually. First, Appellants assert that their travel is "hours of work" as "[t]ime spent traveling" for which an employee is "required to" (1) "travel during regular working hours" or (2) "drive a vehicle or perform other work while traveling." 5 C.F.R. § 551.422(a)(1)–(2). Appellants argue that their travel is "required" under these OPM provisions since the prison "needs" the hospital shifts "covered." Reply Br. 17.

Second, Appellants argue that their travel constitutes "hours of work" as a "preparatory" or "concluding" activity because it is "closely related to [their] principal activities" and "indispensable to the performance" of those activities. 5 C.F.R. § 551.412(a)(1). The officers assert that their travel is "closely related to" and "indispensable to" their guarding duties because, "without that travel[,] . . .

---

[6]    Appellants resist the characterization of their travel between a prison and hospital shift as commuting because, in their view, commuting is limited to travel between home and work, and the officers here are not stopping at home between shifts. *See* Reply Br. 14–15 (citing 5 C.F.R. § 551.422(b)). But the definition of commuting need not be so restricted. Indeed, the regulation that Appellants cite to defines "'home to work' travel," specifically. 5 C.F.R. § 551.422(b). It makes no mention of commuting, let alone defines that term. *Id.*

guarding [an] inmate at the hospital would not be possible." Appellants' Br. 35.

And finally, Appellants assert that their travel is "suffered or permitted" work or "idle time" that counts as "hours of work" under 5 C.F.R. § 551.401(a)(2)–(3). For "suffered or permitted" work or "idle time" to constitute "hours of work," that work must be "for the benefit of" the employer. 5 C.F.R. § 551.401(a). The officers argue that their travel time in this case is for the prison's benefit because "the [prison] needs a qualified correctional worker to guard [a] prisoner at the . . . hospital." Appellants' Br. 40.

Each of Appellants' primary arguments depends on an employer's generic need to staff shifts. But to find that employee travel is "hours of work" so long as an employer "needs" a shift "covered"; or that the employee couldn't get to that shift "without that travel"; or that the employer "needs a qualified" employee to cover a shift—all of these would be to say that all travel "to and from the actual place of performance of the principal activit[ies]" requires compensation under the FLSA. *See* 29 U.S.C. § 254(a)(1). Yet we know that can't be true. Congress said so. *Id.* Accordingly, the officers fail to persuade us that their travel time falls within these OPM-defined "hours of work."

## CONCLUSION

We have considered Appellants' remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Claims Court's judgment.

## **AFFIRMED**