Oddie CLEARY, Lewis C. Brooks, Claude Howard, John Williams, Leonid Brenman, and Louis A. Osterling, Plaintiffs,

v.

ADM MILLING CO., Defendant.

No. 92 C 1190.

United States District Court, N.D. Illinois, E.D.

June 21, 1993.

5. Lewis Carroll, *Alice's Adventures in Wonder-land,* ch. 6.

Marvin Gittler, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, IL, Andrew Scott Ward, Charles L. Berger, Berger & Berger, Evansville, IN, for plaintiffs.

Timothy C. Klenk, Jerome Kiley Bowman, Pope, Ballard, Shepard & Fowle, Ltd., Chicago, IL, for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The plaintiffs have filed a one count amended complaint against their employer, ADM Milling Co. ("ADM"), in which they allege that ADM violated Section 207 of the Fair Labor Standards Act (the "FLSA") by not compensating the plaintiffs for off-work time in which they were "on-call." Defendant ADM has filed a motion for summary judgment. For the reasons discussed below, the court grants ADM's motion.

### Background

This suit was filed by 6 of the 7 maintenance employees at ADM's Chicago wheat processing plant (the "Plant").[1] All of the plaintiffs are members of the American Federation of Grainmillers, Local 69 (the "Union"), which represents the plaintiffs and all other ADM production employees in contract negotiations at the Plant.

The Plant operates on three 8–hour shifts, and the plaintiffs normally work on the first shift—6:30 a.m. to 3:00 p.m. If repairs are required on the second or third shifts or on weekends, the "miller" on duty will page one of the plaintiffs and request that he come in. Pursuant to an agreement between the Union and ADM, such "call-ins" are made in order of seniority, starting with the most senior employees. Since ADM began operating the Plant, the plaintiffs have averaged 1.25 call-ins each per week, with the average call-in lasting an hour and ten minutes, excluding travel time.[2]

With one exception (Mr. Brooks, who lost his pager), the plaintiffs carry pagers so that

---

1. Except where specifically indicated otherwise, the undisputed material facts upon which this opinion is based are taken from the joint statement of undisputed facts contained in the parties' August 21, 1992 Final Pre-trial Order. The parties agreed that that joint statement is a part of the evidentiary record in the case and may be read to the jury by the Court or any party. Final Pre-trial Order at p. 2.

2. In the statement of undisputed facts contained in the Final Pre-trial Order, the plaintiffs stipulate to the accuracy of defendant's exhibit 11 (average frequency of call-ins per plaintiff from 1/22/90–6/28/92) and defendant's exhibit 13 (average time worked per call-in from 1/22/90–6/28/92). These exhibits indicate that each of the plaintiffs received an average of 1.25 call-backs per week, and that each call-back lasted an average of one hour and ten minutes, excluding travel time. In their Local Rule 12(N) statement (which was filed approximately four months *after* the Final Pre-trial Order), however, the plaintiffs state that they "dispute the reliability" of these exhibits because ADM failed to maintain all payroll records of the plaintiffs. This argument lacks merit. As indicated by Exhibit L to ADM's 12(M) statement, only 8 out of 468 time cards are missing, and those 8 time cards were not included in the calculations in the relevant tables. Hence, this portion of the plaintiffs' 12(N) statement not only contradicts their stipulation in the Final Pretrial Order, but it is also unsupported. Accordingly, the court deems the plaintiffs to have admitted that they each received an average of 1.25 call-backs per week, and that each call-back lasted an average of one hour and ten minutes, excluding travel time.

they can be contacted for call-ins without having to remain at home or near a telephone. These pagers, which are about half the size of a package of cigarettes and can be set in either an audio or vibration mode, are provided by ADM at no cost to the plaintiffs. After receiving a page, the employees have one half hour to respond by telephone, and one hour from the original phone call from the Plant in which to arrive at the Plant.

During the time period relevant to this litigation, two collective bargaining agreements were in effect (hereafter, the "1988 CBA" and "1990 CBA").[3] Both collective bargaining agreements describe the plaintiffs' wages, including the pay for call-ins. The 1990 CBA, for example, provides that for each call-in, no matter how short the duration, employees shall receive the greater of four hours pay at their regular hourly rate or time and a half for the time actually spent working at the Plant. Neither collective bargaining agreement, however, contains any provision for pay to maintenance workers for simply being on-call.

Although the plaintiffs assert that employees are restricted in the range of activities they can pursue while on-call, they do not assert that any employee was ever formally disciplined for failing to respond to a callback. Moreover, while ostensibly on-call, the plaintiffs ate out at restaurants, went to the movies, watched sports on TV, entertained friends and family, went to a pool hall, gardened, and played games with family members.[4] Indeed, the plaintiffs occasionally did not respond to pages; called to state that they could not come in because of excessive alcohol consumption; or informed their supervisor (or the miller responsible for paging maintenance people) before the end of their shift that they did not wish to be paged that evening.[5] ADM has no rules about where or how far from the Plant the plaintiffs may live. Furthermore, M.C. Ragland, the millwright who is not a plaintiff in this case, does not carry a pager or participate in the call-in program.

Although both the 1988 CBA and the 1990 CBA contain grievance procedures, at no time has any plaintiff (or any other employee) ever presented any grievance to the Union or ADM in which it was claimed that ADM should pay maintenance employees for simply being on-call. Plaintiff Oddie Cleary was on the Union committee that negotiated both the 1988 CBA and the 1990 CBA.

Nevertheless, on February 14, 1992, the plaintiffs filed the instant action in which they allege that the failure of ADM to pay them for on-call time is a violation of the FLSA. The plaintiffs request a total damage award in excess of $560,000.00 *per plaintiff* (1.5 times their normal pay rate for an additional 16 hours for every day they worked an 8–hour shift, and 1.5 times their normal pay rate for 24 hours for every day they did not work at all). For the following reasons, this court grants ADM's motion for summary judgment.

## Discussion

Rule 56 of the Federal Rules of Civil Procedure requires this court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The court must "decide whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* All reasonable inferences, however, must

---

**3.** ADM purchased the Plant from Dixie Portland Flour Mills, Inc. and started operating it on January 22, 1990. The 1988 CBA was in effect from July 1, 1988 through June 30, 1990. The 1990 CBA has been in effect since July 1, 1990 and will remain in effect until July 1, 1993.

**4.** All of the undisputed facts in this sentence were taken from the parties' 12(M) and 12(N) statements.

**5.** If there is a major breakdown, however, all of the plaintiffs may be called in.

be drawn in the non-movant's favor. *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990).

Although the Seventh Circuit has not directly addressed the issue of compensation for "on-call" time under the FLSA, the Supreme Court has held that under appropriate circumstances, waiting time may constitute working time under the FLSA.[6] *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). The key inquiry is whether the "on-call" time "is spent predominantly for the employer's benefit or for the employee's ... [a question] dependent upon all the circumstances of the case." *Id.* In other words, "facts may show that the employee was 'engaged to wait,' which is compensable, or they may show that the employee 'waited to be engaged,' which is not compensable." *Owens v. Local No. 169,* 971 F.2d 347, 350 (9th Cir.1992), quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944).

In determining whether waiting time is spent primarily for the benefit of the employer, courts have emphasized two predominant factors: 1) the degree to which the employee is free to engage in personal activities during the on-call period;[7] and 2) the agreement between the parties.[8]

A. *Employee's Freedom to Engage in Personal Activities.*

■ The regulations which clarify the "waiting to be engaged" doctrine state that an employee's on-call time is only compensable when "the employee is unable to use the time effectively for his own purposes." 29 C.F.R. § 785.15. This does not mean "that the employee must have substantially the same flexibility or freedom as he would if not on-call, else all or almost all on-call time would be working time, a proposition that the

settled case law and the administrative guidelines clearly reject." *Bright,* 934 F.2d at 677.

When analyzing an employee's ability to effectively use his time for his own purposes, courts have considered a number of factors including: "(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time." *Owens,* 971 F.2d at 351 (collecting cases) (footnotes deleted).

■ There is no single dominant factor, and substantial interplay exists among them. *Id.* For instance, a short time limit for response will have the effect of restricting an employee's geographical movements. If the worker strays too far from the jobsite, he will not be able to return there in time to meet the response time requirements. Likewise, the frequency and length of call-backs will affect the ability of the employee to engage in certain personal activities. In *Renfro v. City of Emporia, Kansas,* 948 F.2d 1529 (10th Cir.1991), the Tenth Circuit held that a 20 minute response time limit, combined with 3–5 call backs *per day* and no freedom to decline a call-back, entitled a municipal fireman to compensation under the FLSA. *Id.* at 1535–1538. In contrast, in *Bright,* the en banc Fifth Circuit ruled against a plaintiff who was required to respond to *all* calls; responded to an average of four to five calls

**6.** The FLSA requires that employers provide overtime compensation to employees who work more than forty hours per week. 29 U.S.C. § 207(a)(1).

**7.** *Skidmore,* 323 U.S. at 138, 65 S.Ct. at 163; *Birdwell v. City of Gadsden,* 970 F.2d 802, 809–10 (11th Cir.1992); *Martin v. Ohio Turnpike Com'n,* 968 F.2d 606, 609–11 (6th Cir.1992), cert denied — U.S. —, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993); *Cross v. Arkansas Forestry Com'n,* 938 F.2d 912, 916–17 (8th Cir.1991); *Bright v. Houston Northwest Medical Center Survivor, Inc.,*

934 F.2d 671, 674–78 (5th Cir.1991) (en banc), *cert. den.* — U.S. —, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992).

**8.** *Skidmore,* 323 U.S. at 137, 65 S.Ct. at 163; *Owens,* 971 F.2d at 354–355; *Brock v. El Paso Natural Gas Co.,* 826 F.2d 369, 373–74 (5th Cir. 1987); *Rousseau v. Teledyne Movable Offshore, Inc.,* 805 F.2d 1245, 1248 (5th Cir.1986), *cert. den.* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987).

*per week*; was required to be reachable by beeper; was required to be at the hospital "within approximately 20 minutes" of getting a call; and could not be intoxicated. *Bright*, 934 F.2d at 672–679. While the *Bright* decision acknowledged that the on-call status made the plaintiff's job "highly undesirable and arguably somewhat oppressive," the Fifth Circuit nevertheless observed that "the FSLA's overtime provisions are more narrowly focused than being simply directed at requiring extra compensation for oppressive or confining conditions of employment." *Id.* at 678.

■ In the case at bar, the plaintiffs were clearly able to use the on-call time effectively for their purposes. There was no on-premises living requirement; there were not excessive geographical restrictions on employee movements (e.g., there are no rules about where or how far from the Plant the plaintiffs could live); the frequency of call backs (on average, 1.25 times per week) was not unduly restrictive;[9] the time limit for response (one hour) was not unduly restrictive; the employees could request that they not be paged on a given night;[10] the employees engaged in a variety of personal activities while on-call; the employees were never formally disciplined for ignoring a page; and finally, the employees were not tied to a telephone, since ADM provided them with pagers.[11]

Based on these undisputed facts, the court concludes that the plaintiffs were in fact able to use the on-call time effectively for their own purposes.

**B.** *Agreement Between the Parties.*

■ Another important factor in determining whether on-call time is compensable is "whether the policy was based on an agreement between the parties." *Owens*, 971 F.2d at 354. In the case at bar, the on-call compensation procedure was a direct product of the collective bargaining process. Even though both the 1988 CBA and the 1990 CBA explicitly addressed compensation for call backs—neither provided any compensation for on-call time. As in *Owens*, "because Plaintiffs were employed under a collective bargaining agreement that provided overtime compensation for actual call-in work, but not for other off-duty time", the plaintiffs in the case at bar implicitly accepted the terms of their employment. *See, Owens*, 971 F.2d at 355. This is especially damaging to the plaintiffs' case since plaintiff Oddie Cleary was on the Union committee that negotiated both collective bargaining agreements.

■ Furthermore, although both the 1988 CBA and the 1990 CBA contain grievance procedures, at no time has any plaintiff (or any other employee) ever presented any grievance to the Union or ADM in which it was claimed that ADM should pay maintenance employees for simply being on-call.[12]

---

9. Even if the plaintiffs' were called back 2–8 times per week (as the plaintiffs belatedly suggest without support), this still would not be unduly restrictive. *Compare Renfro* (3–5 call backs per day; FLSA liability) with *Bright* (4–5 call backs per week; no FLSA liability).

10. *See, e.g., Brock*, 826 F.2d at 373–374 (ability to trade call-back responsibilities increased employee's ability to use off-hours for her own purposes).

11. In contrast, in *Cross*, one of the few FLSA/ "on-call" cases in which the plaintiffs actually prevailed, one of the key factors was the requirement that the employees actively monitor radios, and not simply carry pagers: "Because the radio must be on at all times, the employees' ability to entertain in their homes, attend social gatherings, attend church services or engage in personal pursuits is limited. The employees' ability to enjoy common activities such as watching television or reading is also decreased because they

must devote attention to radio transmissions." *Cross*, 938 F.2d at 917.

12. Plaintiffs also argue in their brief in opposition to the summary judgment motion that the Portal to Portal Act, 29 U.S.C. § 254, requires that the time plaintiffs spend traveling to and from each call-back be compensated, on the grounds that it is integral to or closely related to the employees' regular duties. In the amended complaint, however, the plaintiffs do not allege any violation of the Portal to Portal Act. Accordingly, this argument is not properly before the court. Even if it were, the plaintiffs' claim is barred by the unambiguous language of the statute, which provides that ". . . no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh–Healey Act, or the Bacon–Davis Act, on account of the failure of such employer to pay an employee . . . for . . . travelling to and from the actual place of performance of the

This, too, implies constructive acceptance of the lack of compensation for on-call time. *See, Rousseau,* 805 F.2d at 1248 ("continuance of employment can be evidence of an implied agreement to the terms of that employment"); *Owens,* 971 F.2d at 355 ("the Plaintiff mechanics in the present case may not have liked the company's formal call-in system, but by continuing to work, they constructively accepted the new terms").

Hence, both the actual collective bargaining agreements and the parties' practical construction of these agreements indicate that they did not intend on-call time to be compensable.

In sum, the undisputed evidence regarding the degree to which the plaintiffs are free to engage in personal activities while on-call and the agreements between the parties is so one-sided that ADM must prevail as a matter of law.

### Conclusion

For the foregoing reasons, the defendant's motion for summary judgment is granted.

principal activity or activities which such employee is employed to perform ..." 29 U.S.C. § 254(a)(1). The exception to § 254(a)(1) for employers who maintain a "custom or practice"

of compensating employees' for such travel time is clearly inapplicable here, since the custom or practice of ADM is *not* to pay the plaintiffs for travel time.