Barbara HINER et al., Plaintiffs,

v.

**PENN–HARRIS–MADISON SCHOOL CORPORATION, Defendant.**

No. 3:01–CV–0733 CAN.

United States District Court,
N.D. Indiana,
South Bend Division.

March 28, 2003.

Timothy W Woods, Jones Obenchain LLP, South Bend, IN, for Barbara Hiner, Frances Kedik, Diana Hensell, Diana Hillebrand, Judy Powell, Roy Rehmel, Pat Delaurelle, Peggy Arndt, Steve Garcia, Sue Fields, Lori Healy, Lori Ann M Kelly, Rich Smith, Karen L Ryckeart, Paula J Sebecki, Kay L Green, Gloria K Brown, Maureen McKee, Irma McNiel, Janet G Hogue, Terri M Byers, plaintiffs.

Jody H Odell, Janilyn Brouwer Daub, Barnes and Thornburg, South Bend, IN, William T Hopkins, Jr, Mark S Kittaka, Mark D Scudder, Barnes and Thornburg, Fort Wayne, IN, for Penn–Harris–Madison School Corporation, defendant.

## MEMORANDUM AND ORDER

NUECHTERLEIN, United States Magistrate Judge.

Plaintiffs, twenty bus operators employed by Defendant Penn–Harris–Madison School Corporation, filed a claim for unpaid overtime compensation pursuant to the Fair Labor Standards Act ("the FLSA") and the Indiana Wage Statute on October 15, 2001. Plaintiffs moved for Partial Summary Judgment on October 15, 2002, alleging that mandatory bus inspections and all drive time should be included as hours worked under the FLSA. On October 17, 2002, Defendant moved for Partial Summary Judgment, alleging that certain compensated time was not working time under the FLSA. For the following reasons, Plaintiffs motion [Doc. No. 19] is **GRANTED IN PART** and Defendant's motion [Doc. No. 25] is **GRANTED IN PART**.

### I. RELEVANT BACKGROUND

#### A. *Factual Background*

Penn–Harris–Madison School Corporation ("the Corporation") is an Indiana School Corporation. Plaintiffs, twenty school bus drivers, are employees of the Corporation who operate school buses on a daily basis during the school year. In addition to state and federal law, the parties relationship is governed by a 2001 Bus Operator's Agreement ("the Agreement")

negotiated between the Corporation and the Chauffeurs, Teamsters and Helpers Union Local # 364.

### 1. *2001 Bus Operators' Agreement*

The Agreement dictates the conditions and terms of the drivers' employment from January 1, 2001 to December 31, 2003. The pertinent provisions of the Agreement are as follows.

Articles VI and VII of the Agreement governs Plaintiffs' work schedule. Article VII, section one states that the operators' paid time for their morning routes begins with their first student pick-up and ends with their last student drop-off. (2001 Agreement at 4). Section two addresses the drivers' afternoon routes and provides that the operators shall be paid for their time beginning ten minutes prior to their first student pick-up and ending with their last student drop-off. The Agreement further provides the drivers with an extra half-hour of compensated time to account for necessary maintenance activities. *Id.*

### 2. *Plaintiffs' Typical Schedule*

While fact issues remain regarding each individual driver's schedule, Plaintiffs' typical daily schedule is as follows. Most Plaintiffs drive two daily routes, the first, or secondary school route, delivers secondary students to and from school, while the second, or elementary school route, delivers elementary students. Both routes occur in the morning and afternoon with some drivers driving additional mid-day routes in between their other responsibilities.

#### a) *Morning Routes*

Prior to embarking on their secondary student routes, Plaintiffs are required to conduct a pre-trip bus inspection. After dropping off the secondary students, Plaintiffs have a period of "down-time" until beginning their elementary school routes.

This period of down-time varies for each driver, ranging anywhere from twelve minutes to one hour. Under the Agreement, Plaintiffs are paid for their down-time in addition to a paid morning break which is included as part of their morning route. Following their morning breaks/down-time, the drivers begin picking up elementary school students. The time at which the drivers begin their elementary routes varies depending on individual elementary schools' start times. Following their elementary routes, the drivers have another period of down-time until some drivers begin their mid-day routes.

#### b) *Mid–Day Routes*

Many drivers drive additional mid-day bus routes with responsibilities including transporting preschoolers to and from school, transporting secondary students to and from the school's career center, and transporting special needs students to various locations. The time it takes to complete Plaintiffs' mid-day routes varies from twenty minutes to two hours depending on drivers' responsibilities. Under the Agreement, Plaintiffs are guaranteed at least two hours pay for their mid-day routes. (2001 Agreement at 5). Following their mid-day routes, Plaintiffs have another period of down-time, typically lasting an hour, before returning to the schools to prepare for afternoon dismissals.

#### c) *Afternoon Routes*

As in the morning, Plaintiffs pick up secondary school students first, conduct their routes, and return to the elementary schools for their elementary routes. As previously stated, Plaintiffs' pay begins ten minutes prior to student dismissal for the first student pick-up and ends with the last student drop-off.

### 3. Inspections

In addition to their driving duties, Plaintiffs are required to conduct several safety inspections each day. Plaintiffs are required by both the Corporation and the United States Department of Transportation to perform a pre-trip inspection of their buses and fill out an inspection form prior to their morning departure.

The inspection form requires Plaintiffs to acknowledge that they have inspected the engine compartment, the front of the bus, front/rear suspension, wheels, brakes, exhaust system, lights, seats, and the emergency accommodations on the vehicle. Plaintiffs must also conduct inspections prior to their mid-day and afternoon routes. These inspections include making sure that the bus's tires are inflated, the lights are working, and there is no fluid leaking from the bus.

Finally, Plaintiffs are expected to conduct a complete walk-through of their buses after finishing their afternoon routes to ensure that no students are on the bus and that the bus's windows are closed. To ensure that these inspections occur, Corporation buses are equipped with a safety device located at the rear of the bus which sounds a buzzer if a driver leaves prior to deactivating the device.

### 4. Extra-curricular Activities

Some plaintiffs also drive students on extra-curricular trips. Such trips include transporting students to athletic events, band competitions, field trips, and various other extra-curricular activities. The length of these extra-curricular trips varies from a single day to overnight outings. The Agreement does not require Plaintiffs to remain within a certain distance of an extra-curricular activity site. However, trip sponsors may limit drivers' ability to leave trip locations as well as prescribe when drivers must return to extra-curricular sites.

### 5. Pre and Post Route Driving Time

During the 1999–2000 school year, the Corporation opened a new transportation center in Mishawaka, Indiana. Although the center is used to store Corporation buses, some plaintiffs are required to keep their buses at their homes if their homes are closer to their first pick-up or last drop-off site than the transportation center. The distance and length of Plaintiffs' driving time before their first and after their last sites thus varies depending on where drivers keep their buses and where their pick-up and drop-off sites are located. As stated in section I.A.1., Plaintiffs' employment agreement only pays them from their first morning pick-up until their final afternoon drop-off. Hence, Plaintiffs are not compensated for the time it takes them to drive to their first morning pick-up and from their final afternoon drop-off.

### B. Procedural History

Plaintiffs filed a complaint on October 15, 2001, claiming that Defendant failed to pay them overtime under the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq.*, and the Indiana Wage Statute, Ind.Code 22–2–5–1 *et al.* In essence, Plaintiffs allege that they worked in excess of forty hours per week without receiving overtime pay as required under the FLSA and Indiana law. The parties consented to proceed before this Court pursuant to 28 U.S.C. § 636(c) on January 9, 2002.

Plaintiffs moved for partial summary judgment on October 15, 2002, arguing that the mandatory bus inspections and pre and post route drive time must be included as hours worked under the FLSA. Defendant then moved for partial summary judgment on October 17, 2002, arguing that Plaintiffs' down-time was not compensable working time under the FLSA whenever it exceeded twenty minutes. This Court heard arguments on

both motions on March 26, 2003. Neither party has moved for summary judgment regarding Plaintiffs' state law claims. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367(a).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 922 (7th Cir.2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *King v. Preferred Technical Group,* 166 F.3d 887, 890 (7th Cir.1999).

To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1088 (7th Cir.2000); *See also* N.D.L.R. 56.1(b) ("In determining a motion for summary judgment, this Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted ... as supported by the depositions, discovery responses, affidavits, and other admissible evidence on file."). Where a factual record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First National Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## III. THE FAIR LABOR STANDARDS ACT

The Fair Labor Standards Act provides that persons may not be employed for more than forty hours a week without receiving overtime pay in the amount of one and a half times their regular pay. 29 U.S.C. § 207(a). Although the statute governs employee payment as calculated through working hours, the FLSA does not specifically define "hours worked." Courts have construed "hours worked" as the time that an employee is required to be on an employer's premises, on duty, or at a prescribed work place. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 690–91, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *See also Armour & Co. v. Wantock,* 323 U.S. 126, 133–34, 65 S.Ct. 165, 89 L.Ed. 118 (1944) (holding that readiness to serve may constitute hours worked).

## IV. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs moved for partial summary judgment on October 15, 2002, arguing that their daily bus inspections and all pre and post route drive time should be included as hours worked for purposes of overtime compensation under the FLSA.

### A. *Relevant Law*

The Portal–to–Portal Act ("POP"), 29 U.S.C. § 252 *et seq,* eliminates certain preliminary and postliminary activities that do not include any principal work activities from "hours worked" under the FLSA. 29

U.S.C. § 254(a). The Code of Federal Regulations gives lackluster guidance in defining necessary terms under the POP. The regulations state that the "term 'principal activities' includes all activities which are an integral part of a principal activity." 29 C.F.R. § 785.24(b). The regulations do, however, provide examples of when an activity becomes compensable:

Two examples of what is meant by an integral part of a principal activity are . . . the following:

(1) In connection with the operation of a lathe, an employee will frequently, at the commencement of his workday, oil, grease, or clean his machine, or install a new cutting tool. Such activities are an integral part of the principal activity, and are included within such term.

(2) In the case of a garment worker in a textile mill, who is required to report 30 minutes before other employees report to commence their principal activities, and who during such 30 minutes distributes clothing or parts of clothing at the workbenches of other employees and gets machines in readiness for operation by other employees, such activities are among the principal activities of such employee.

*Id.*

■ An activity is integral to a principal activity if the activity is made necessary by the nature of the work performed, it fulfills mutual obligations between the employer and his employees, the activity directly benefits the employer in the operation of his business, and the activity is closely related to other duties performed by the employees. *Steiner v. Mitchell,* 350 U.S. 247, 252, 76 S.Ct. 330, 100 L.Ed. 267 (1956). Absent contractual obligations, ordinary travel from home to work, i.e. commuting, is not included as hours worked under the FLSA even where an employer agrees to pay for commute time. 29 C.F.R. § 785.34–35.

**B.** *Mandatory Bus Inspections and Pre and Post Route Drive Time are Compensable Activities under the FLSA*

■ As stated in section I.A.1, Plaintiffs' work hours begin to be calculated with the first student pick-up of their morning routes and end with the last student drop-off. In the afternoon, drivers are compensated beginning ten minutes prior to student dismissal for their first afternoon route and again ending with their last student drop-off. Plaintiffs contend that their pre and post route inspections as well as the drive time to their first morning pick-up and from their last student drop-off should be counted as hours worked under the FLSA.

Defendant concedes that the drivers' pre and post route drive time is compensable working time under the FLSA:

[Defendant] concedes that for Plaintiffs who parked their buses at the transportation center, their driving time from the transportation center to the first student pickup or from the last student drop off to the transportation center constitutes "working time" for purposes of overtime compensation under the FLSA. For Plaintiffs who parked their buses at their homes, Penn–Harris–Madison concedes that driving time from their homes to their first student pickup constitutes 'working time' for purposes of overtime compensation under the FLSA whenever the Plaintiffs conducted a safety inspection before they began driving. Similarly, the school concedes that those Plaintiffs' driving time from the last student drop off to their homes constitutes "working time" for purposes of overtime compensation under the FLSA whenever the Plaintiffs conducted a safety inspection after they reached their home.

(Def. Resp. at 13, n. 7).

Defendant further concedes that the "time spent conducting the required inspections constitutes 'working time.'" (Def. Reply. at 8, n. 10).

Defendant's concession comports to the relevant caselaw as well. *See e.g. United Transportation Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1118–19 (10th Cir.1999) (holding that time spent by city bus drivers traveling to and from relief points at the beginning and end of their split shifts was compensable work time); *Marshall v. Gerwill, Inc.*, 495 F.Supp. 744, 749 (D.Md.1980) (holding that time spent by cab drivers to pick up their manifest sheet, preparing their cabs, and driving back to their office after their last fare constituted hours worked under the FLSA).

■ In light of 29 C.F.R. § 785.34–35 and the aforementioned caselaw, Defendant's concession is reasonable. Defendant does, however, make two arguments in response to Plaintiffs' claims. First, Defendant presents an equitable setoff argument, reasoning that, even if Plaintiffs' drive time should be counted under the FLSA, Plaintiffs have already received compensation for this time as the result of being paid for their down-time and, for inspections, as the result of compensation received for the half-hour of time allotted for maintenance activities in the parties' employment agreement. Defendant also argues that, where the compensation for down-time is insufficient to cover pre and post route pay, then any time in excess of what Plaintiffs spend during their down-time is *de minimis*, and therefore not compensable under the FLSA.

Regarding Defendant's equitable setoff theory, it seems contradictory for Defendant to argue that Plaintiffs' down-time be excluded from working time for overtime purposes, while also arguing that the same time can be carried over to other periods, such as drive and inspection time, in which Plaintiffs are undoubtedly working and having their time counted toward overtime.

Defendant initially cited no caselaw in support of its setoff argument. On March 26, 2003, Defendant filed a Notice of Supplemental Authority, citing *Barefield v. Village of Winnetka*, 81 F.3d 704 (7th Cir. 1996) [Doc. No. 47], in support if its theory that compensated down-time is not working time under the FLSA. Although Defendant cited *Barefield* in support of another position, the case contains dicta stating that the defendant village's equitable setoff was allowable under the FLSA. *See Id.* at 710 ("therefore, the meal periods are not compensable under the FLSA, and Winnetka may properly offset the meal break against the compensable [pre shift] roll call time worked by plaintiffs.").

This Court is reluctant to follow such scant precedent based on dicta, especially when no other caselaw has been provided by either party regarding the equitable setoff of down-time for actual working time. Further, the parties' employment agreement contemplates that Plaintiffs will have both compensated downtime and uncompensated inspection time. It would be truly unfair, at this point, to allow Defendant to take advantage of a contractual ambiguity and deny Plaintiffs pay for time spent conducting inspections and driving to and from their bus routes. *See e.g. Collins v. Ralston Purina Co.*, 147 F.3d 592, 604 (7th Cir.1998); *Progressive Ins. Co. v. Harger* 777 N.E.2d 91, 93 (Ind.Ct. App.2002) (holding that the doctrine of *contra proferentem* construes ambiguous language in contracts against the drafter).

■ Regarding inspections, Defendant argues that Plaintiffs have already received compensation for inspection time as the result of being paid for their down-time and the half-hour of compensated time for maintenance activities found in

the parties' employment agreement.[1] As previously stated, Defendant's equitable setoff argument is unpersuasive. Therefore, the only time from which Plaintiffs can draw is the extra half-hour awarded them by their employment agreement. Fact issues exist, however, concerning the length of time Plaintiffs need to conduct necessary inspections. *Compare* (Reynolds Dep. at 54; Heeter Dep. at 119) (stating that morning inspections take two to three minutes) *to* (Hensell Affi. at ¶ 5) (stating that same inspections take approximately fifteen minutes). Thus, Plaintiffs whose time records show that they are able to accomplish their mandatory inspections within the extra half-hour allotted by the employment agreement need not be afforded any additional time toward overtime compensation. By contrast, plaintiffs who are able to prove that these tasks took longer than a half-hour must be paid accordingly unless inspection time exceeding a half-hour is *de minimis*.

■ "Insubstantial or insignificant periods of time beyond scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded...[as]...*de minimis.*" 29 C.F.R. § 785.47 (*citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). The *de minimis* rule "applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes [in] duration, and where the failure to count such time is due to considerations justified by industrial realities." *Id.* (*citing Glenn L. Martin Nebraska Co. v. Culkin*, 197 F.2d 981, 987 (8th Cir.1952)).

■ Courts generally consider four factors in determining whether an activity is *de minimis* as a matter of law: (1) the amount of daily time spent on the additional work; (2) the administrative difficulty in recording the time; (3) the size of the aggregate claim; and (4) the regularity of the work. *See Lindow v. United States*, 738 F.2d 1057, 1062–63 (9th Cir.1984). *See also* 29 C.F.R. § 785.47 ("An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable working period of time he is regularly required to spend on duties assigned to him"). Hence, time spent on inspections exceeding the allotted half hour shall not be considered *de minimis* where the time is regularly spent and documented by the parties.

Therefore, because Defendant concedes that the mandatory inspections as well as Plaintiffs' pre and post route driving time constitute hours worked under the FLSA, Plaintiffs motion for partial summary judgment is **GRANTED IN PART**. Because this Court has insufficient evidence to determine the length of each individual plaintiff's pre and post route drive time, as well as the duration of individual plaintiff's inspections, this Court is unable to grant or deny Plaintiffs' motion for partial summary judgment as to each individual plaintiff.

In light of the standards set forth in the Code of Federal Regulations and the afore cited decisions, however, this Court is able to specify the legal standard it shall apply to each individual plaintiff. Regarding pre and post route drive time, Plaintiffs' driving time from the transportation center (or

---

1. Defendant further claims that Plaintiffs had additional ten minute periods after their elementary routes in the morning and prior to their afternoon routes as well as time left over after the completion of drivers' midday routes. (Dft. Resp at 10). Defendant argues that this time should also be counted toward time spent conducting inspections. As with Plaintiffs' down-time argument, this Court is unpersuaded as to why this time should be used to compensate Plaintiffs for inspection periods at other times during the day.

from their homes in instances where individual plaintiffs conduct a pre trip inspection prior to departure) to their first student pickups, or from their last student drop offs to the transportation center (or to their homes in instances where individual plaintiffs conduct a post trip inspection upon return) constitutes "working time" for purposes of overtime compensation under the FLSA. Regarding the time in which individual plaintiffs conduct pre and post route inspections, this Court holds that Plaintiffs have already been compensated for inspection time in the amount of one half-hour per day as stipulated in the parties' employment agreement. Defendant must count time spent on inspections exceeding a half-hour in all cases which are not *de minimis* as defined in this order.

## V. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant filed a motion for partial summary judgment on October 17, 2002, arguing that the down-time taken by Plaintiffs between their morning bus routes; their outgoing and return trips for extra-curricular events; and their compensated time after the completion of their mid-day routes exceeding twenty minutes does not constitute hours worked within the meaning of the FLSA for purposes of overtime compensation.[2]

### A. *Relevant Law*

Because the Seventh Circuit has not defined the term "down-time" in relation to compensable time under the FLSA, this Court will examine similarly situated cases, both within this circuit and without, to develop an appropriate definition for this case. *See Bowers v. Remington Rand,* 159 F.2d 114, 116 (7th Cir.1946) (holding that whether time is compensable under the FLSA depends on the facts and circumstances of the case). Particularly, this Court will examine judicial determinations of "on-call" time and "waiting time."

### 1. *On–Call Time*

In determining whether on-call time is compensable, the key question is whether time is spent predominately for the employer's benefit or for the benefit of the employee. *See generally* 29 C.F.R. § 785.14–16. Courts have emphasized two factors in determining whether on-call time is spent primarily for the benefit of the employer: (1) the degree to which the employee is free to use this time for personal pursuits, and (2) any agreement between the employer and the employee. *See e.g.* 29 C.F.R. § 785.14–16; *Cleary v. ADM Milling Co.,* 827 F.Supp. 472, 475–76 (N.D.Ill.1993) (holding that factory maintenance employees did not have to be compensated for on-call time where they were able to use the time effectively for their own purposes).[3]

---

**2.** Defendant's limitation to periods in excess of twenty minutes is based on 29 C.F.R § 785.18 which states: "Rest periods of short duration, running from five minutes to twenty minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time."

**3.** *See also Alexander v. City of Chicago,* 994 F.2d 333, 339–40 (7th Cir.1993) (holding that,

in order to determine whether meal times are compensable, the court must determine the frequency and extent of interruptions, frequency of communications with the employer, the effect of restrictions on meal times, and the extent to which an employee's attention is focused on official matters); *Martin v. Ohio Turnpike Com'n,* 968 F.2d 606, 609–11 (6th Cir.1992); *Cross v. Arkansas Forestry Com'n,* 938 F.2d 912, 916–17 (8th Cir.1991); *Owens v. Local No. 169,* 971 F.2d 347, 351 (9th Cir.1992); *Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 809–10 (11th Cir.1992) (examining on-call time).

### a) The Degree to Which Employees May Use Their Time for Personal Pursuits

In *Dinges v. Sacred Heart St. Mary's Hospitals, Inc.*, 164 F.3d 1056, 1058–59 (7th Cir.1999), the court held that on-call time in which emergency medical technicians ("EMTs") were required to arrive at a hospital within seven minutes of receiving a page, was not compensable working time under the FLSA. In reaching its decision, the court reiterated that treating on-call time as compensable working time depends on whether an employee is able to devote the time to the ordinary activities of private life. *Id.* at 1057. The court reasoned that, since EMTs could eat, sleep, read, exercise, watch television, and do housework while on call, the on-call time could be used effectively for personal pursuits and was not working time. *Id.* at 1058.

### b) Employer–Employee Agreements

Courts must also examine any agreements between the parties concerning whether on-call time is compensable under the FLSA. *Cleary,* 827 F.Supp. at 475. In its investigation, the court should examine whether the on-call time is a direct product of a collective bargaining process as well as whether the employees accepted the terms of their employment. *Id.* at 475–77.

### 2. Waiting Time

Concerning situations in which employees undergo waiting periods, courts draw a distinction between employees who are "waiting to be engaged" as opposed to those who are "engaged to wait." An employee is on duty, and thus "engaged to wait," where "waiting is an integral part of the job." 29 C.F.R. § 785.14–15.[4] By comparison, an employee is "waiting to be engaged" where he is "completely relieved from duty" and where the time period is "long enough to enable him to use the time effectively for his own purposes." 29 C.F.R. § 785.16(a).

In *United*, the Tenth Circuit held that city bus drivers' waiting time in excess of one hour during a split shift was not compensable working time under the FLSA where the drivers were free to do what they wanted before reporting back to a specific location to begin their second shift. *United,* 178 F.3d at 1117–18. The court reasoned that the time was not working time because drivers were able to use the time effectively for their own purposes, knowing that they would not have to return to work until a specified hour. *Id.* at 1117.

### B. When an employee is afforded over twenty minutes of down-time which may be used for the employee's own purposes, such time does not constitute hours worked under the FLSA.

■ Both Plaintiffs and Defendant agree that individual bus operators underwent periods of down-time between their routes, during extra curricular trips, and at other times. Plaintiffs contend that the fact that the employment agreement paid the drivers for their down-time establishes that Defendant intended this time to count toward overtime. *See* (Pla. Reply at 16) (*citing Leahy v. City of Chicago,* 96 F.3d 228, 232 (7th Cir.1996) ("Under the FLSA, employers and employees may make reasonable provisions of contract [to guide]

---

**4.** Examples of employees engaged to wait include the following: "[a] stenographer who reads a book while waiting for dictation, a messenger who works a crossword puzzle while awaiting assignments, [a] fireman who plays checkers while waiting for alarms and a factory worker who talks to his fellow employees while waiting for machinery to be repaired." 29 C.F.R. § 785.15.

the computation of work hours where precisely accurate computation is difficult or impossible...Employers and employees may resolve whether certain activity is 'work' through a collective bargaining agreement, as long as the agreement comports with the FLSA.")).

*Leahy* dealt with an employment contract which specifically stated that " 'all time in excess of the hours worked in a normal workday (8 hours) and the normal workweek (40 hours) shall be compensated' at the rate of time-and-one-half." *Leahy*, 96 F.3d at 232. Noting that individual officers' working conditions precluded a "one-shot solution" to plaintiffs' claim that meal time constituted working time under FLSA, the court held that the bargaining agreement itself outright precluded the plaintiffs' contentions because the agreement clearly stated that officers were entitled to overtime rates for hours worked in excess of eight hours per day. *Id.* The court reasoned that, under the clearly delineated terms of the agreement, officers who worked over forty hours a week, including hours worked during mealtimes, would receive overtime pay, while officers who did not exceed forty hours of working time in a week would be precluded from overtime pay. *Id.* Plaintiffs' attempt to parlay the decision in *Leahy* to the employment contract in this case is unpersuasive. Unlike the agreement in *Leahy,* the present agreement is not definite with regard to overtime pay, and this Court will not infer an agreement where one does not exist.

Also dealing with contract interpretation, the Seventh Circuit noted in *Dinges* that "[a]lthough the FLSA overrides contracts, in close cases it makes sense to let private arrangements endure—for the less flexible statutory approach has the potential to make everyone worse off." *Dinges,* 164 F.3d at 1059. This, unfortunately, is not a close case. Like the ambulance driv-ers in *Dinges,* Plaintiffs are receiving compensation for periods in which they are not actually working. While Defendants agree that the employment agreement requires Plaintiffs to be paid for these periods, unlike the contract in *Leahy,* nowhere in the agreement do the parties explicitly agree that down-time is to be counted toward overtime.

Because the parties' agreement is not conclusive in this matter, it is therefore necessary, as with Plaintiffs' motion, to establish a legal standard that this Court shall apply when calculating whether individual plaintiffs' down-time constitutes working time under the FLSA. This Court thus finds that individual plaintiff's compensated down-time is not considered working time under the FLSA in cases where an individual employee's down-time exceeds twenty minutes and the employee is not required to perform services for Defendant, but is instead free to use his or her down-time for personal pursuits.

Due to the multiple number of plaintiffs in this case, however, it cannot be said that all the plaintiff bus operators are actually using their down-time for personal purposes. *Compare* (Reynolds Dec. at ¶ 8) (alleging that Plaintiffs often declined directives to perform job related tasks during their down-time, stating that they had "other plans") *to* (Hensell Affi. at ¶ 6; Hiner Affi. at ¶ 3; Green Affi. at ¶ 3; Szucs Affi. at ¶ 5) (alleging that drivers performed work related tasks during their down-time such as transporting special needs students to various locations, picking up students who had missed their bus, making deliveries to students who left items on buses, and talking to office personnel); (Hiner Affi. at ¶ 4; Green Affi. at ¶ 4; Szucs Affi. at ¶ 6; Reynolds Dec. at ¶ 27) (contending that the amount and quality of down-time during extra-curricular trips varied depending on who was

supervising the extra-curricular trip, what requests were made of the driver, and the destination and circumstances of each trip).

Because this Court has insufficient evidence to determine whether each plaintiff's use of down-time was for personal purposes as well as whether individual down-time periods exceeded twenty minutes, this Court is thus unable to grant or deny Defendant's partial motion for summary judgment as to each individual plaintiff. As with Plaintiffs' motion, this Court is only able to set a legal guideline to apply to individual plaintiffs. Therefore, Defendant's motion for partial summary judgment is **GRANTED IN PART**.

## V. CONCLUSION

For the foregoing reasons Plaintiffs motion [Doc. No. 19] is **GRANTED IN PART** and Defendant's motion [Doc. No. 25] is **GRANTED IN PART**. Specifically, this Court rules as follows:

- Regarding Plaintiffs' motion, this Court holds that Plaintiffs' pre and post route driving time from the transportation center (or from their homes in instances where individual plaintiffs conduct a pre trip inspection prior to departure) to their first student pickup, and from their last student drop off to the transportation center (or to their homes in instances where individual plaintiffs conduct a post trip inspection upon return) constitutes working time for purposes of overtime compensation under the FLSA. Additionally, this Court holds that the time spent by Plaintiffs conducting pre and post route bus inspections constitutes working time for purposes of overtime compensation under the FLSA. This Court holds that Plaintiffs have already been compensated for inspection time in the amount of one half-hour per day as stipulated in the parties' employment agreement and need only receive fur-

ther compensation for time exceeding a half-hour in cases which are not *de minimis* as defined in this order.

- Regarding Defendant's motion, this Court holds that individual plaintiff's compensated down-time is not considered working time for the purpose of calculating overtime under the FLSA in cases where an individual employee's down-time exceeds twenty minutes and the employee is not required to perform services for Defendant, but is instead free to use his or her down-time for personal pursuits.

**SO ORDERED.**